## The LUBRIZOL CORPORATION

### v.

### EXXON CORPORATION, Charles R. Evans, Richard D. Lower, and Gates Data Center, A Joint Venture.

### Civ. A. No. H–85–2450.

United States District Court,
S.D. Texas,
Houston Division.

March 19, 1986.

Carol Vance, Bracewell & Patterson, Houston, Tex., John M. Newman, Jr., Jones, Day, Reavis & Pogue, Cleveland, Ohio, for plaintiff.

Richard B. Miller, Miller, Keeton, Bristow & Brown, Houston, Tex., for defendants Exxon Corp., and Gates Data Center.

J. Donald Bowen, Helm, Pletcher, Hogan, Bowen & Saunders, Houston, Tex., for defendants Charles R. Evans and Richard D. Lower.

## MEMORANDUM AND ORDER

DeANDA, District Judge.

Pending before the Court is Defendants' motion to dismiss Plaintiff's suit for failure to assert a claim upon which relief can be granted. Having reviewed the record and the applicable law this Court concludes that Defendants' motion to dismiss should be denied.

The background of the present lawsuit is necessary to understand Defendants' grounds for their motion to dismiss. Prior to this action, Lubrizol initiated a patent infringement suit against Exxon and Exxon Research and Engineering Company ("Exxon Defendants") in the United States District Court for the District of New Jersey, hereinafter referred to as the New Jersey suit. To facilitate the discovery process in such litigation the parties stipulated to a protective order. Such protective order required identification of all individuals having access to the confidential information exchanged between the parties and specified the locations where this information was to be housed.

Lubrizol discovered that its confidential information was being computerized by the Exxon Defendants in Clear Lake, Texas and consequently made a motion before the New Jersey Court to have its information removed from the computer in accordance with the protective order.[1] The Exxon Defendants represented to Lubrizol that the computer system on which the confidential information had been placed was under the exclusive control of the Exxon Law Department. Lubrizol then commissioned two independent experts to evaluate the integrity and security of the computer operations. These experts consulted with Defendant Evans, the manager of the Litigation Support Group in the Law Department of Exxon having primary responsibility for the computer operations at Clear Lake, Texas and with Defendant Lower, an attorney employed by Exxon as an assistant for computer litigation support systems. Defendant Lower advised these experts that Exxon maintains the computer in Clear Lake, Texas for processing litigation documents, that the Clear Lake facility is operated by Exxon Law Department personnel, that security at the facility is provided by Exxon and that all documents are entered into the computer system by employees of the Exxon Law Department.

Several months later Lubrizol gained access to an affidavit filed by Defendant Evans in unrelated litigation in Louisiana. Evans stated in his affidavit that the Clear Lake computer facility is really a joint venture of five major oil companies, known as the Gates Data Center and that he is employed as the manager of the center.[2] He

---

1. The terms of the protective order stipulated that all of Lubrizol's confidential information was to be housed by Exxon in either the Exxon Law Department in Florham Park, New Jersey or in Houston, Texas.

2. Gates is the anacronym used by the participating oil companies, Gulf, Amoco, Texaco, Exxon, and Shell in referring to their computer operations center in Clear Lake, Texas.

further explained that the Data Center is controlled by a management committee of five members—one member from each participating oil company. He also asserted that Gates is not under the control of any single member of the participants.

Lubrizol then made renewed motions to the New Jersey Court for sanctions against Exxon for violations of the protective order. By agreement of the parties, a ruling on the renewed motion for sanctions was postponed while Exxon and Lubrizol engaged in settlement negotiations over the patent infringement claims which resulted in a settlement agreement as to all such claims and the entry of an agreed order of dismissal with prejudice in the New Jersey suit.

In the present action before this Court, Lubrizol seeks compensatory and punitive damages, attorney's fees and an order enjoining Evans from consulting with any oil company other than Exxon for a period of three years. Lubrizol additionally requests that the Gates computer be cleared of all its confidential information. Lubrizol bases its claim for relief on the alleged violations of the New Jersey protective order and fraud perpetrated on Lubrizol throughout the discovery process in the New Jersey suit.

Defendants base their motion for dismissal on F.R.Civ.P. 12(b)(6) for failure to assert a claim on which relief can be granted. Attached to the Defendants' memorandum in support are numerous exhibits presenting matters outside the pleadings. The decision of whether or not to accept materials beyond the complaint itself is entirely within the discretion of the Court. 5 Wright & Miller, Federal Practice and Procedure § 1336 (1981). F.R.Civ.P. 12(b) provides that when matters outside the pleadings are presented to and considered by the court, a motion to dismiss shall be treated as one for summary judgment and disposed of in accordance with F.R.Civ.P. 56. Accordingly, on February 27, 1986, this Court issued an Order notifying the parties that Defendants' motion to dismiss had been converted into a Rule 56 motion for summary judgment.

The summary judgment standard is a strict one, allowing the entry of summary judgment only if the pleadings, supporting exhibits and extra-pleaded materials, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Shelton v. City of College Station,* 754 F.2d 1251, 1254 (5th Cir.1985). In considering a motion for summary judgment, a court must inspect the entire record and draw all reasonable inferences in favor of the party opposing the motion. *In Re Municipal Bond Reporting Antitrust Litigation,* 672 F.2d 436, 440 (5th Cir.1982). Once the moving party makes an initial showing that no genuine issue of material fact exists, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Hood v. Tenneco Texas Life Insurance Co.,* 739 F.2d 1012, 1014 (5th Cir.1984). For the reasons to be discussed below Defendants have not demonstrated the absence of genuine issues as to any material facts or that they are entitled to judgment as a matter of law.

■ The gravamen of Defendants' motion is that the doctrine of res judicata bars Lubrizol from asserting its present claim for relief. The term res judicata, in its broadest sense, covers four distinct types of preclusion: bar, merger, collateral estoppel and direct estoppel. The specific elements which must be shown before the bar doctrine of res judicata can be applied are: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must have been a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 869 (5th Cir.1984). This is a four-pronged test, all four requirements must be met before the bar doctrine of res judicata can be applied. *Nilsen v. City of Moss Point, Mississippi,* 701 F.2d 556 (5th Cir.1983). If these elements are established, then the

judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit, not only as to every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented. *Stevenson v. International Paper Co., Mobile, Alabama*, 516 F.2d 103, 108–09 (5th Cir.1975). The Court will discuss each requirement with regards to this case, *seriatim.*

▮ On its face, the present complaint does not meet the requirements of identical parties in that Evans and Lower were not named parties in the New Jersey suit. The parties to the dismissed New Jersey suit were Lubrizol, Exxon, and Exxon Manufacturing and Research Company. A person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests to be his virtual representative. *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.1975). Whether a party's interests in a case are virtually representative of a nonparty is a question of fact for the trial court. *Id.* at 719.

▮ The facts here present no inference of virtual representation of interest. Evans and Lower were both employees of Exxon at the time of the New Jersey suit but employment alone does not provide sufficient privity for purposes of meeting the identical party requirement of the res judicata doctrine.[3] Neither Evans nor Lower was involved in the events leading to Lubrizol's assertions of patent infringements and thus their interests were never at issue and hence could not have been properly represented. The present complaint alleges misrepresentation and fraud committed by Evans and Lower during the discovery

process in the patent infringement action not misrepresentation and fraud in actual patent infringement activities.

A discussion of the second requirement, a court of competent jurisdiction, is unnecessary as it is undisputed that the Order in the New Jersey suit was entered by a court of competent jurisdiction.

▮ The third and fourth requirements of a final judgment on the merits and the same cause of action shall be considered together. Pursuant to F.R.Civ.P. 41(a)(1)(ii), Lubrizol, Exxon Corporation and Exxon Research and Engineering Company stipulated to the dismissal of the New Jersey action including all claims and counterclaims with prejudice. An order was then duly signed and entered by the Court.[4] It is clear that a dismissal with prejudice at any stage of a judicial proceeding generally constitutes a final judgment on the merits which bars a later suit on the same cause of action. *Astron Industrial Associates, Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 960 (5th Cir.1968). However, whether or not such a dismissal operates as a final adjudication on the merits depends on the circumstances under which the dismissal took place. Federal Rules Digest, § 41a.24 at 83.

▮ The New Jersey Order rested solely on the parties' consent to the stipulation of dismissal with prejudice. This stipulation was predicated by the execution of a settlement agreement between the parties. The Order issued by the New Jersey Court contained no findings of fact or conclusions of law, nor did it expressly incorporate any terms of the settlement agreement. When a judgment dismissing a suit with prejudice is void of any findings, the judgment does

---

**3.** The Fifth Circuit in *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir.1978) provides examples of the types of relationships encompassed by the virtual representation doctrine; presidents and sole stockholders in sufficient privity to be deemed adequately represented by their companies; parent corporations by their subsidiaries and trust beneficiaries by the trustee of the trust.

**4.** The Order entered by the New Jersey Court on September 28, 1984 reads as follows: The Lubrizol Corporation, Exxon Corporation and Exxon Research and Engineering Company, being all of the parties who have appeared in the captioned action, pursuant to Rule 41(a)(1)(ii), Federal Rules of Civil Procedure, stipulate to the dismissal of the captioned action, including all claims and all counterclaims of any party, with prejudice, each party to bear its own costs and attorneys fees.

not bind the parties on any issue which might arise in connection with another cause of action. *American Heritage Life Insurance Co. v. Heritage Life Insurance Co.,* 494 F.2d 3, 8 (5th Cir.1974). Plaintiff's New Jersey suit was based on claims of patent infringement. Plaintiff's present complaint is based on claims of fraud and misrepresentation perpetrated by Defendants during the discovery process in the New Jersey suit.

It is the substance and not the form of the complaints that governs the application of the doctrine of res judicata. "Is the same right infringed by the same wrong? Would a different judgment obtained in the second action impair rights under the first judgment? Would the same evidence support both judgments?" *Nilsen,* 701 F.2d at 559.

The principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action. *Id.* at 559. In the New Jersey suit the primary wrong committed by Exxon was the infringement of patents belonging to Exxon. In the present litigation, the primary wrong alleged against Defendants is fraud and misrepresentation. The claims for damages in the first suit arose out of injuries inflicted before the commencement of the litigation. In the present suit the claims for damages are based on alleged wrongs committed subsequent to the filing of the New Jersey action.[5] The "primary right" test is consistent with the test established by the Supreme Court in 1927:

> A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong ... The facts are merely

the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. *Baltimore Steamship Co. v. Phillips,* 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927).

Defendants assert that because Plaintiff submitted motions before the New Jersey Court for sanctions against Exxon and relied on the same facts now alleged in the present complaint, res judicata precludes the present claims because they were advanced in the prior suit. Defendants' contentions must fail because they have not satisfied the requirements of the four-pronged test as discussed above. Both parties have engaged in semantic debates in their briefs presented to the Court over the meaning of the word claim, consequently a brief discussion of collateral estoppel becomes pertinent. Collateral estoppel prevents a plaintiff from relitigating an issue which the defendant asserts was raised, pled, and adjudged in the earlier litigation. Three criteria must be established before the doctrine of collateral estoppel is invoked: (1) the issue at stake be identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issues in the prior litigation has been a critical and necessary part of the judgment in that earlier action. *Stovall v. Price Waterhouse Co.,* 652 F.2d 537, 540 (5th Cir.1981). As discussed above, the issue at stake in the New Jersey suit was patent infringement, in the present suit, the issues are fraud and misrepresentation. Neither the protective order issue nor the patent infringement issue was actually litigated in the New Jersey suit. The Order issued by the New Jersey Court contains no findings of fact or conclusions of law; therefore, it is impossible to assess whether or not discussions between the parties concerning alleged violations of the protec-

---

**5.** *See Cromwell v. County of Sac,* 4 Otto 351, 352–53, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1876), where plaintiff brought an action to collect on bond interest coupons and was defeated for failing to show that plaintiff had taken the coupons in good faith for value, the Court did not preclude plaintiff from bringing second action on other interest coupons and the bonds themselves. The Court held that the second action was on a different claim or demand so the prior judgment operated as an estoppel only on the points actually controverted.

tive order were a critical and necessary part of the New Jersey judgment. Accordingly, the collateral estoppel theory of the res judicata doctrine fails.

Defendants also assert that even if the res judicata bar is found inapplicable to the present controversy, the Settlement Agreement signed by Lubrizol presents a separate and additional bar to the present claim for violations of the protective order issued by the New Jersey Court.[6] One of the provisions of the Settlement Agreement provides that New York law shall apply in interpretation and construction of the contract.

■ If a Settlement Agreement is plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any type. *Intercontinental Planning Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 300 N.Y.S.2d 817, 822, 248 N.E.2d 576, 579–80 (1969). In the Settlement Agreement, Lubrizol expressly reserved certain other patent infringement claims it then had pending against Exxon in other litigation. Defendants assert that if Lubrizol wanted to reserve its protective order claim it should have expressly done so in the Settlement Agreement. This express reservation of claims by Lubrizol creates ambiguity as to the interpretation of the claim's provision intended by the parties. Lubrizol maintains that the protective order claim was not specifically reserved in the Settlement Agreement due to their belief that it arose out of a separate cause of action. Defendants rely heavily on *Bellefonte Re Insurance Co. v. Argonaut In-*

*surance Co.,* 581 F.Supp. 241 (S.D.N.Y. 1984) to assert that the Settlement Agreement entered into by Lubrizol is unambiguous and presents no interpretive difficulties. This case also involved covenants not to sue arising out of a specific dispute but can be distinguished from the present action in that in *Bellefonte,* the parties clearly defined the particular dispute which formed the basis of their agreement.[7]

The Fifth Circuit, applying New York law, held that if the District Judge finds the agreement in question to be ambiguous, incomplete, or uncertain in any respects, parol evidence of the intent and purposes of the parties in making the contract becomes admissible. *Paragon Resources v. National Fuel Gas Distribution,* 695 F.2d 991, 998 (5th Cir.1983) (interpreting New York law). The Court also stated that in interpreting contracts the Court can look to surrounding facts and circumstances to determine the intent of the parties. *Id.* at 998.

The New York Court of Appeals has held that when parol evidence is admissible the written instrument is regarded as existing and valid, but incomplete, either obviously, or at least possibly, and thus parol evidence is admissible not to contradict or vary but to complete. Thus, the written contract is treated as part of an entire oral agreement, the remainder of which was not reduced to writing. *Chase Manhattan Bank v. First Marion Bank,* 437 F.2d 1040, 1048 (5th Cir.1971) (interpreting New York law). However, before the parol evidence is admitted, two requirements must be met: (1) the writing must not appear, upon inspec-

---

6. The Settlement Agreement signed by all the parties to the original lawsuit which became effective on September 7, 1984, states that Lubrizol will not assert any claim or counterclaim made in the New Jersey action, or which could have been made based on any fact pled or which was a compulsory counterclaim to any claim asserted by Exxon, or bring any suit, action or proceeding on any such claim against Exxon.

7. The Court in *Bellefonte* held that when sophisticated counsel in a commercial context draft a contract that presents no interpretive difficulties, the Court will not look beyond the four

corners of the document to discern what the parties meant. In this case, Plaintiffs agreed not to sue the Defendants in connection with the underlying dispute defined as "a dispute regarding the validity of such contracts of reinsurance and the balances due Defendants thereunder." In its second suit, Plaintiffs alleged that these same contracts should be rescinded because the Defendant failed to disclose material facts which it had a duty to disclose at the time Plaintiffs were solicited to provide the reinsurance. The Court held that the Plaintiffs' second suit was effectively barred.

tion, to be a complete contract, embracing all the particulars necessary to make a perfect agreement, and designed to express the whole arrangement between the parties; and (2) the parol evidence must be consistent with, and not contradictory to the written instrument. *Id.* at 1048.

The affidavit of Mr. Hsu presented to the Court by Plaintiff indicates a material fact question as to the intent of the parties in negotiating the Settlement Agreement. Lubrizol does not deny the validity of the Settlement Agreement itself but asserts that the parties never intended to embrace the protective order claim in their executed agreement. Various communications between respective counsel for Lubrizol and Exxon, Mr. Hsu and Mr. Phillips, indicate the possibility of a collateral, independent contract concerning the protective order claims. New York contract law recognizes the admissibility of parol evidence to prove a collateral, independent contract from that contained in the writing. *Cortlandt v. E.F. Hutton, Inc.,* 491 F.Supp. 1, 4 (S.D.N.Y.1979). Defendants have failed to establish the absence of any material fact questions in the interpretation of the Settlement Agreement, a showing which must be made before summary judgment can ever be granted. Accordingly Defendants' motion for summary judgment relying on the Settlement Agreement to provide an effective bar to Plaintiff's present claim for relief must fail.

In sum, Defendants have failed to establish that the bar doctrine of res judicata applies to the present action, nor have they established that the doctrine of collateral estoppel applies here. Defendants have additionally failed to establish the absence of any genuine issues of material fact in presenting the Settlement Agreement for interpretation by the Court. Accordingly it is hereby

ORDERED that Defendants' motion to dismiss, converted to a motion for summary judgment, is hereby DENIED in all respects.

It is so ORDERED.