# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00538-CV

---

**Alan W. Nalle, Sr., Appellant**

**v.**

**Eric Moreland, Appellee**

---

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-004475, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Alan W. Nalle, Sr., appeals from a summary judgment granted in favor of appellee Eric Moreland.  We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Nalle owns property in the Westlake Oaks subdivision in Austin, Texas, and is a member of the Westlake Oaks Property Owners Association, Inc. (the POA).  In December 2016, Nalle sued the POA for breach of contract, alleging that the POA had failed to enforce Protective Covenants contained in the Westlake Oaks Property Owners Association Declarations by permitting construction of a residence that exceeded a height limit imposed by the Declarations after improperly granting a variance (the POA Lawsuit).  In his petition, Nalle alleged that the POA, acting through its Board of Directors and Architectural Control Committee (ACC), approved plans for construction of a house in violation of the Declarations.  More specifically,

Nalle alleged that the POA's Board of Directors is empowered to appoint the ACC and that both the Board and the ACC have the authority to approve in writing, or disapprove, all plans and specifications for any construction in the subdivision. Although the Declarations impose a two-story height limit on any residence constructed in the subdivision, they also provided that a variance may be granted by a majority of the ACC to "prevent undue hardship." Nalle alleged that the variance was required to be "duly acknowledged and recorded in the deed records of Travis County, Texas."

Nalle further alleged that beginning in February 2015, Eric Moreland, a member of the ACC as well as "an agent for Moreland Properties," exchanged emails with John Stoddard, an architect, regarding plans for construction of a residence in the Westlake Oaks Subdivision on the lot adjacent to Nalle's. The subject of the emails was whether the ACC would approve front and rear renderings of the proposed residence, specifically whether the ACC would approve what "could be interpreted as a three story house." Nalle alleged that in March 2015, Stoddard sent an email to Moreland attaching the final drawings for the residence and asked for ACC approval. The next day, Nalle asserted, "the ACC allegedly approved the plans." Nalle alleges that, in the following months, there were a series of emails exchanged among members of the ACC, including Moreland, and Stoddard regarding the prior approval of the plans and whether the subsequent renderings deviated from those plans. Nalle alleged that in August 2015, Moreland emailed Stoddard, stating: "Your latest plan is approved by the Westlake Oaks Arch[itectural] Committee."

Nalle alleged that all the plans that had been submitted to the ACC were marked "Preliminary" and that from the beginning of construction of the residence in 2016 no variance from the height restriction in the Declarations had been requested or given by the ACC. Nalle

2

asserted that he first became aware of the construction in September 2016 and contacted the ACC in October 2016. Nalle listed several concerns he had with the structure being built based on a "significantly elevated ground floor slab." Following requests for information and a meeting with the ACC and the POA President, Nalle notified the POA that the residence under construction was not in compliance with the Declarations and urged it to contact the owners to inform them that their construction plans may not meet the requirements of the Declarations. Nalle alleged that the POA's Board of Directors called a Special Board Meeting in October 2016 during which they went into executive session. Thereafter, Nalle alleged, the ACC executed a variance applying to the lot under construction and on November 9, 2016, filed the variance in the Travis County Official Public Records.

Based on these factual allegations, Nalle alleged that the POA, acting through its Board of Directors and the ACC, had failed to enforce the Declarations by permitting the construction of a residence that was not in compliance with those Declarations and sought to enforce the POA's Declarations. Nalle further alleged that the ACC failed to comply with the requirements for granting a variance. Nalle asserted that the ACC's conduct, including Moreland's assertion in an email that "We have carports, four car garages and homes with more than 2 levels throughout Westlake Oaks," demonstrated that the ACC did not act reasonably in granting approval of the plans for the residence and, instead, acted arbitrarily "without fair, solid and substantial cause or reason and took action without consideration and in disregard of the facts and circumstances of the matter." Nalle also alleged that "based on the actions of Eric Moreland [] the ACC may have acted for reasons outside of the interests of the Association and its members, and rather, may have acted to benefit other companies and individuals." Based on the same allegations, Nalle asserted a breach of contract claim against the POA. Nalle amended

3

his petition to add a negligence cause of action and to allege that the POA's conduct was intentional because it was aware that the ACC's actions and decisions would cause him damages and violate his right to privacy and right to quiet enjoyment of his home.

In March 2019, Nalle and the POA settled the POA Lawsuit by executing a written Settlement Agreement. The court signed an Agreed Order Dismissing With Prejudice, stating that "[a]ll claims against Defendant Westlake Oaks Property Association, Inc. and its current and former officers, board members, agents, attorneys, representatives, heirs, and assigns are **DISMISSED, With Prejudice**."

In June 2021, Nalle filed the underlying proceeding against Eric Moreland.[1] Nalle alleged that Moreland, as a member of the Westlake Oaks ACC, engaged in conduct that "was outside the usual and customary practices of the ACC" and caused the construction of the residence on the lot adjacent to Nalle to be approved without meeting the requirements for a variance set forth in the Declarations. Nalle alleged that Moreland's conduct was motivated by a business relationship between Moreland and the owner of the adjacent lot and for the purpose of benefitting Moreland financially. Nalle asserted that Moreland's fraudulent conduct in connection with the approval process and his "willingness to put his own financial interests above those of Nalle" caused Nalle harm. Nalle alleged that Moreland's conduct constituted fraud by nondisclosure, which caused him damages in the form of the diminished value of his property and the loss of use and enjoyment of his property, personal injuries, harm to his health, and harm to his peace of mind.

Moreland filed a motion for summary judgment arguing that Nalle's claims were barred by res judicata, collateral estoppel, and judicial estoppel by virtue of the final judgment

---

[1] Nalle initially named, but later non-suited, Moreland Properties, Inc. as a co-defendant.

4

signed by the court in the POA Lawsuit. Moreland also asserted that there was no evidence of one or more elements of Nalle's fraud-by-nondisclosure claim. Nalle countered that the Settlement Agreement in the POA Lawsuit did not cover claims against Moreland; the final judgment in the POA Lawsuit could not have preclusive effect over claims against Moreland because he was not a party to, or in privity with a party to, the POA Lawsuit; and he was not judicially estopped from asserting causes of action against Moreland. Nalle also argued that he had presented evidence raising a fact issue on each of the elements of his fraud-by-nondisclosure cause of action. The trial court granted Moreland's summary judgment motion without stating the grounds for its decision. Nalle then perfected this appeal.

## DISCUSSION

We review the granting of a motion for summary judgment de novo.[2] *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). When the trial court does not specify the grounds for its ruling, summary judgment must be affirmed if any of the grounds on which judgment was sought are meritorious. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents ($90,235) in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013). A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish each element of that defense. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021); *see* Tex. R. Civ. P. 94 (identifying res judicata as affirmative defense). Because it is dispositive, we first address whether Nalle's claims against Moreland were barred by res judicata.

---

[2] The standards for reviewing a summary judgment are well established and undisputed on appeal. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166a(c), (i). Accordingly, we need not repeat them here.

Res judicata, broadly speaking, is the generic name for a group of related concepts concerning the preclusive effect of prior judgments. *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). "Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Id.*; *American Int'l Indus., Inc. v. Scott*, 355 S.W.3d 155, 160 (Tex. App.—Houston [1st Dist.] 2011, no pet.). For res judicata to apply, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties in each action; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008); *Citizens Ins. Co. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). This doctrine prohibits splitting a cause of action in order to "bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Barr*, 837 S.W.2d at 628. "The judgment in the first suit precludes a second action by the parties and their privies on matters actually litigated and on causes of action or defenses arising out of the same subject matter that might have been litigated in the first suit." *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (citing *Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984)).

Texas courts apply the transactional approach to res judicata, which requires that claims arising out of the same subject matter be litigated in a single lawsuit. *Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 58 (Tex. 2006) (citing *Barr*, 837 S.W.2d at 631). Under this approach, we examine the factual bases, not the legal theories, presented in the cases to determine whether the cases share the same set of operative facts. *Samuel v. Federal Home Loan Mortg. Corp.*, 434 S.W.3d 230, 234 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing

*Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 496 (Tex. App.—Texarkana 2002, pet. denied)). In determining whether the facts arose out of a single transaction, we consider whether the facts are related in time, space, origin, or motivation, and whether they form a convenient unit for trial. *Id.* (citing *Barr*, 837 S.W.2d at 631).

## 1. Earlier final judgment on the merits

An agreed order or judgment of dismissal in settlement of a controversy is a judgment on the merits. *Travelers Ins.*, 315 S.W.3d at 866; *see also Lubrizol Corp. v. Exxon Corp.*, 632 F. Supp. 326, 330 (S.D. Tex. 1986) ("It is clear that a dismissal with prejudice at any stage of a judicial proceeding generally constitutes a final judgment on the merits which bars a later suit on the same cause of action."). The order or judgment of dismissal is conclusive on the matters actually raised and litigated and on every other matter that could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation. *In re J.G.W.*, 54 S.W.3d 826, 832 (Tex. App.—Texarkana 2001, no pet.). Nalle does not dispute the existence of a prior final judgment on the merits in the POA Lawsuit, which arose out of the same facts and circumstances in this suit.

## 2. Identity of parties

The second element, identity of parties, does not require that the parties in both lawsuits be identical if the parties named in the subsequent action are in privity with a party to the prior judgment—that is, a party who is so connected with a party to the prior judgment that the party represented the same legal right. *See Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971). For purposes of res judicata, this identity of interest exists when: (1) the person can control an action even if he is not a party to it, (2) the party to the prior action

7

represented the person's interest, or (3) the person is a successor-in-interest to the party in the prior action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996). To determine whether identity exists, we examine the circumstances of each case to identify whether the parties share any interests. *See Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 800-01 (Tex. 1992).

There is no general definition of privity that can be applied automatically in all cases. *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 96 (Tex. App.—Eastland 2010, pet. denied). The determination of privity requires an examination of the circumstances of each case to determine whether the party to the prior action represented the party's interest in the second. *Traweek v. Larkin*, 708 S.W.2d 942, 945 (Tex. App.—Tyler 1986, writ ref'd n.r.e.). For example, a physician who allegedly acted in concert with a worker's compensation carrier and an employer when they examined the plaintiff employee has been held to be in privity with the carrier and employer such that the physician could assert the defense of res judicata in a later malpractice case brought by the employee. *See Soto v. Phillips*, 836 S.W.2d 266, 269-70 (Tex. App.—San Antonio 1992, writ denied). Moreover, a person who participates in an agreed or negotiated judgment is barred by the judgment even though that person is not named as a party in the pleadings. *See Gracia*, 667 S.W.2d at 519. The present suit complains of actions Eric Moreland took in his capacity as a member of the ACC. Nalle sought to hold the POA accountable for the actions of the ACC and its members. As such, the POA and Moreland had so close an identity of interest that the party to the POA Lawsuit—the POA—represented the same legal right that is at issue in this case. *See United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 674 (Tex. App.—Houston [1st Dist.] 1993, no writ). The final judgment in the POA Lawsuit expressly states that it is dismissing claims not only against the POA but also its

"current and former officers, board members, agents, attorneys, representatives, heirs, and assigns." As a member of the ACC, which took the actions complained of in the POA Lawsuit, Moreland had such an identity of interest with the POA that he was in privity with the POA. Accordingly, Moreland satisfied the second element of res judicata.

### 3. Second action based on claims raised in first action

As previously described, Nalle's claims in the underlying proceeding are based on the same allegations that were made in the POA Lawsuit; namely, that Moreland's conduct as a member of the ACC caused the improper approval of a non-conforming residence on the lot adjacent to Nalle. The injury Nalle seeks compensation for in both the POA Lawsuit and the underlying proceeding are likewise identical—damages to the value of his property and to his ability to use and enjoy his property. The claim that Nalle has brought against Moreland in this suit could have been raised and litigated in the POA Lawsuit and, in fact, to a large degree was litigated in that suit. The principles underlying the doctrine of res judicata are consistent with precluding this subsequent suit against a party with the same interest as the POA and concerning the same subject matter that was litigated in the POA Lawsuit. *See Barr*, 837 S.W.2d at 628 (doctrine of res judicata not only prevents relitigation of claims that have been finally adjudicated, but also of related matters that should have been litigated in first proceeding because they are part of same claim or cause of action).

### CONCLUSION

For the foregoing reasons, we conclude that Moreland established the elements of his affirmative defense of res judicata and that the trial court properly granted summary judgment on that ground. We therefore affirm the trial-court's order dismissing Nalle's claims

against Moreland without considering the propriety of summary judgment on any other basis. *See* Tex. R. App. P. 47.1.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed

Filed:   February 16, 2023