In re KING MEMORIAL HOSPITAL, INC. and Florida Hospital Group, Inc., Debtors.

Robert A. SCHATZMAN, as Co-Trustee of King Memorial Hospital, Inc. and Florida Hospital Group, Inc., Plaintiff,

v.

DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, STATE OF FLORIDA, Defendant.

Bankruptcy Nos. 79–01220–BKC–SMW, 80–0129–BKC–SMW–A.

United States Bankruptcy Court, S. D. Florida.

April 30, 1982.

James Barclay, Cape Coral, Fla., for defendant.

Gary C. Matzner, Miami, Fla., for plaintiff.

Robert A. Schatzman, Miami, Fla., pro se.

## FINDINGS OF FACT

## CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

The Plaintiff, Robert A. Schatzman, as Co-Trustee of King Memorial Hospital, Inc. and Florida Hospital Group, Inc., filed an Amended Complaint as an Adversary Proceeding within the meaning of Bankruptcy Rule 701(1) and (2). The Plaintiff is seeking an order allowing the Debtor to construct a 126-bed facility pursuant to plans submitted to the Defendant, Department of Health and Rehabilitative Services, State of Florida.

On or about November 30, 1979, the Co-Trustee received by certified mail a determination by the Defendant that the Debtor-hospital had forfeited its exemption from Certificate of Need review to construct a 126-bed hospital and providing the Debtor-hospital thirty (30) days in which to request an administrative hearing pursuant to Chapter 120, Florida Statutes, the Florida Administrative Procedure Act. The Plaintiff-Trustee herein, Robert A. Schatzman, responded with a suggestion of bankruptcy reciting the automatic stay provision of Section 362 of the United States Bankruptcy Code (11 U.S.C. § 362). The Plaintiff then filed a Verified Complaint (King Memorial Hospital, Inc. and Florida Hospital Group, Inc., Debtors, Robert A. Schatzman, as Co-Trustee of King Memorial Hospital, Inc. and Florida Hospital Group, Inc., Plaintiff, vs. Department of Health and Rehabilitative Services, State of Florida, Defendant, Adversary Proceeding No. 80–0013–BKC–SMW–A) seeking a temporary restraining order, a preliminary injunction

and permanent injunction, enjoining the Defendant from entering any orders in the matter of King Memorial Hospital.

By Order dated January 25, 1980, this Court issued a Temporary Restraining Order directing the Defendant to show cause why, pending a hearing and determination of the application of the Debtor-hospital, a preliminary injunction should not be issued against the Defendant. On February 14, 1980, this Court ordered, upon the joint Stipulation of the parties, that, pending final judgment in the Adversary Proceeding, the Defendant was enjoined from entering any orders in the matter of King Memorial Hospital.

After having heard argument of counsel in the Adversary Proceeding, this Court issued an Order enjoining the Defendant, Department of Health and Rehabilitative Services, State of Florida, from entering any order in the matter of King Memorial Hospital.

The Plaintiff then commenced this cause of action and a Final Hearing was held on this matter on the 5th day of March, 1982, at Miami, Florida. By agreement between the parties, the Final Hearing consisted of oral argument of counsel and the submission of written Memorandum in support of their respective positions.

The Plaintiff contends that the Debtor, King Memorial Hospital, Inc. (King), is entitled to an exemption from the Certificate of Need laws by virtue of the grandfathering provisions of Florida Statutes § 381.497 (1973) and prays for an order upholding the exemption. The Defendant, Department of Health and Rehabilitative Services, State of Florida (DHRS), contends that King has not satisfied State law requirements to preserve the exemption from Certificate of Need review and prays that this Court enter a declaratory judgment against Plaintiff declaring that the Debtor, King, has forfeited its exemption from the Certificate of Need laws.

## FINDINGS OF FACT

1. The Plaintiff is duly qualified and acting in his capacity as Co-Trustee.

2. This is an Adversary Proceeding within the meaning of Bankruptcy Rule 701.

3. An exemption from the Certificate of Need Laws was established by the Debtor-hospital pursuant to Florida Statutes § 381.497 (1973) for the construction of a 126-bed general hospital in that land was acquired by the Debtor for the proposed hospital and preliminary construction plans were filed with the Defendant prior to July 1, 1973.

4. The Defendant, by and through its Office of Community Medical Facilities, is the agency of the State of Florida that has the responsibility and duty for health planning in Florida and particularly for the regulatory enforcement of the Certificate of Need program which includes Certificate of Need exemptions established pursuant to Florida Statutes § 381.497.

5. Chapter 78–194, Section 3, Laws of Florida, repealed the grandfather exemption, Florida Statutes § 381.497, as amended by Chapter 77–147 and 77–400, Laws of Florida. The Legislature further directed, pursuant to Section 2 of Chapter 78–194, that DHRS provide notice to each health care facility project determined by DHRS to be exempt or grandfathered under the Health Facilities and Health Services Planning Act. DHRS notified King (f/k/a Opa Locka General Hospital), pursuant to Chapter 78–194 *supra*, by letter dated July 10, 1978, that King was, in fact, exempt from the Certificate of Need laws pursuant to Section 381.497.

6. The DHRS letter to King dated July 10, 1978, interpreted Chapter 78–194 *supra* as requiring a project to be "under physical and continuous construction (pursuant to final construction plans approved by the Office of Licensure and Certification by 1 July 1979", in order to preserve its exemption from Certificate of Need review.

7. DHRS further interpreted Chapter 78–194 by promulgating Florida Administrative Code Rule 10–5.05(2) and Rule 10–5.02(21). This latter Rule provided a narrow and restrictive interpretation of the

term "construction". These Rules which became effective June 5, 1979, twenty-five (25) days before the repeal of the grandfather exemption, were declared invalid by an Administrative Hearing Officer, and such invalidation was upheld by the District Court of Appeal in and for the First District, State of Florida, *Westchester General Hospital and Sylvia Urlich, as President of Westchester General Hospital v. State of Florida, Department of Health and Rehabilitative Services*, Case Nos. TT–222 and VV–189 (Fla. 1st DCA, opinion filed March 22, 1982).

8. King indicated its intent to construct the hospital facility and commence construction prior to June 30, 1979, and so conveyed such information to DHRS by letter dated January 10, 1979.

9. Prior to June 30, 1979, King retained the services of an architect, Charles Lackey, and a licensed engineer, Sergio Breiterman. Mr. Lackey prepared architectural drawings and plans for submission to DHRS. Mr. Breiterman prepared piling plans for the facility. Both Mr. Lackey and Mr. Breiterman accompanied the hospital Administrator, Robert Jensen, to the Office of Licensure and Certification of DHRS in June of 1979. The DHRS Office of Licensure and Certification issued a letter to Mr. Lackey on behalf of King dated June 25, 1979, informing King that plans were approved for commencement of foundation work. While such approval was limited to the foundation and necessary site work shown on the construction documents, it also warned that since "subsequent... changes to be made within the building... may affect the foundation work... the risk of starting foundation work at this time must be assumed by the owner." Robert Pender, as building contractor, received a Building Permit from the City of Opa Locka on June 27, 1979, to erect, with CBS block, a foundation for the facility. Physical activity commenced, including site clearing via bulldozer; a survey was taken by Donald W. MacIntosh Associates, Inc.; a contract was entered into with Pender Building Corporation for construction of the facility; and a groundbreaking ceremony was held on June 30, 1979.

10. During the month of July 1979, site clearing and bulldozing continued, and DHRS approved the schematic drawings for King on July 31, 1979.

11. On August 6, 1979, Art Forehand, Administrator of the Office of Community Medical Facilities for DHRS, requested a status report of King's construction efforts and requested copies of construction financing arrangements and construction contract. Counsel for the hospital, Penn B. Chabrow, replied by letter dated August 15, 1979, forwarding a copy of the contract and advising DHRS that financing arrangements were being finalized.

12. This Court will take judicial notice of the testimony of Autha (Art) W. Forehand in the matter of *Department of Health and Rehabilitative Services v. Westchester General Hospital v. Health Systems Agency of South Florida*, Case No. 80–044 (Fla. DOAH 1982), in accordance with Federal Rule of Evidence 201.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this Proceeding and over the parties.

2. The Debtors having filed a Petition on October 2, 1979, this case is subject to the United States Bankruptcy Code, Title 11, which became effective on October 1, 1979 (Public Law No. 95–598 [1978], Title IV, Section 402[a]).

3. This is the Court's second perusal of an American colloquialism fondly known as the "Grandfather" clause (grandfather exemption). This Clause was first introduced into several of the Constitutions of the Southern States limiting the right to vote to those who could read or write any article of the Constitution of the United States or lawfully employed or who owned property assessed at $300.00, but excepting those who served in the army or navy of the United States or the Confederate States in time of war, their lawful descendents and persons of good character who understand

the duties and obligations of citizenship under republican form of government. (Black's Law Dictionary 828 (4th rev. 1968). The Grandfather clause has become popular in licensing statutes as exempting one from examination otherwise required of those engaged in the regulated business at the time of the enactment of legislation based upon having certain qualifications which a legislature deems sufficient to preclude the necessity of a qualifying examination. *Solomon v. Sanitarians' Registration Board*, 155 So.2d 353, 356 (Fla.1963).

4. This Court's previous confrontation with this "grandfather" exemption resulted in a stay of an action brought by DHRS from commencing any action the effect of which would be forfeiture of the grandfather exemption from the Certificate of Need laws of the State of Florida. This examination of the "grandfather" exemption shall focus upon whether, in fact, the Debtor has forfeited its rights to the exemption as claimed by DHRS or that the Debtor's rights are preserved and it may go forward with construction of a 126-bed replacement facility. To make such a determination, there are two issues to be decided by this Court: First, whether or not the Debtor commenced construction prior to July 1, 1979, pursuant to Chapter 78–194, *supra*, in order to preserve its exemption; and, second, if the Debtor did, in fact, preserve its exemption by commencing construction prior to July 1, 1979, did it continue to preserve such an exemption until October 2, 1979, the date of the filing of the Petition in Bankruptcy.

5. Chapter 78–194, *supra*, the operative legislation that effectively repealed the grandfather exemption, makes no reference to the terms and conditions of the revocation other than to state that it was effective July 1, 1979. However, as directed by Chapter 78–194, *supra*, DHRS did, in fact, interpret the legislation by its letter dated July 10, 1978, which, in part, states:

> "The project must be under physical and continuous construction pursuant to final construction plans approved by the Office of Licensure and Certification by July 1,

1979, to preserve its current exemption from Certificate of Need review."

This interpretation is significant in the absence of direction in the legislation, coupled with the subsequent invalidation of the Rules promulgated by DHRS. Therefore, the Debtor, to be considered to have preserved its exemption, would be required to be under physical and continuous construction pursuant to approved final construction plans by July 1, 1979.

At the time of notice to King, there was no interpretation given of the terminology "physical", "continuous construction" or "final construction plans". Art Forehand, as Administrator of the Office of Community Medical Facilities for DHRS, had overall responsibility for enforcing the Certificate of Need Laws and was the signator of the Administrative Complaint against King. His interpretation of "construction" is that it may commence prior to site preparation and that indicators of commencement of construction include the execution of a construction contract with a general contractor, the obtaining of a building or foundation permit, the ordering of building materials, or the signing of contract(s) with subcontractors. Any of these events may occur before clearing and preparing the site for construction. (Testimony of Autha [Art] Forehand in *Department of Health and Rehabilitative Services v. Westchester General Hospital v. Health Systems Agency of South Florida, supra*) Mr. Forehand testified at his deposition in the case *sub judice* that site preparation for King had been done prior to July 1, 1979 (deposition of Art Forehand, Page 20). Therefore, based on the facts that King had engaged an architect Charles Lackey, and a licensed engineer, Sergio Breiterman; the construction site was levelled and prepared and a survey taken; and a permit for foundation work had been pulled by the contractor from the City of Opa Locka, it is the determination of this Court that King met the requirements of physical and continuous construction prior to July 1, 1979.

As to the requirement that construction be pursuant to final construction plans, the

approval by DHRS on June 25, 1979, for commencement of foundation work for the above-referenced approval is sufficient to meet the DHRS requirement of approval of final construction plans. Again, absent a definition by DHRS, this Court must take into consideration the facts and circumstances and testimony of the parties. The intention of DHRS was to have plans sufficient by which the exempted entity could dig trenches and pour concrete in the ground (deposition of Art Forehand, Page 19). Certainly, the plans approved by DHRS on June 25, 1979, allowed the hospital to pull a construction permit (which they did) and erect a structure. This is consistent with DHRS' letter to King on July 31, 1979, giving approval to the schematic drawings as a follow-up to the foundation plans. DHRS could have taken the position to withhold such approval subsequent to July 1, 1979, if King did not meet the requirements for having final construction plans approved prior to July 1, 1979. This Court thereby concludes that the Debtor preserved its grandfather exemption through July 1, 1979, in that the Debtor had met the requirements of DHRS' interpretation of Chapter 78–194, *supra*, in that the Debtor had commenced physical and continuous construction pursuant to approved final construction plans prior to July 1, 1979.

■ 6. We now turn to the issue of preservation of the grandfather exemption through the date of filing of the Petition on October 2, 1979. Chapter 78–194, *supra*, does not speak to the issue of maintaining construction until the project is completed, and DHRS never formally adopted any rules addressing this particular question. The only possible predicate was DHRS' letter of August 6, 1979, wherein it advised the Administrator of King that:

"As you are aware, the exemption or grandfather status that you obtained . . . was repealed effective June 30th. . . In order to preserve this exemption, it was necessary to be under construction by June 30, 1979. However, please carefully note that in order to continue to preserve the exemption, you must maintain contin-

uous construction activity. See the attached copy of Rule 10–5.02(21) and Rule 10–5.05(2). Since there has been some question raised about your project, would you please advise this office at your earliest possible convenience of the status of your construction efforts, and specifically provide us with your construction financing arrangements and construction contract."

This interpretation by DHRS is not unreasonable given the fact that an exempted facility could appear to commence construction prior to July 1, 1979, and not in good faith go forward with actual or "continuous" construction, thereby frustrating the intent of the legislature to repeal the grandfather exemption. The Findings of Fact hereinabove and the testimony of Art Forehand clearly indicate that continuous construction clearly proceeded from July 1, 1979, through July 31, 1979, when DHRS approved the schematic plans. The testimony of Raymond Greenlaw, the former Associate Director of the Health Systems Agency of South Florida, does not reasonably address the issue of construction. Mr. Greenlaw only reported on activity at the site, which is only one of several factors to be taken into consideration. This, coupled with the fact that Mr. Greenlaw never contacted any of the principals of King, or the construction people (deposition of Raymond Greenlaw, Page 28), does not contradict the finding of continuous construction.

Mr. Forehand testified that the purpose of his August 6, 1979, letter was to make sure that King "kept going", and to this end, he requested a status report of construction efforts, specifically providing DHRS with construction financing arrangements and a copy of the construction contract. Counsel for King, by letter dated August 15, 1979, forwarded a copy of the construction contract and advised Mr. Forehand that it was negotiating financing arrangements with four sources which indicated they were willing to provide the financing required for the construction. The construction contract binding the hospital to a $390,600.00 liability and the payments of monies to the architect and engineer and

the rental of equipment and the taking of a survey certainly indicated the good faith effort of the hospital to build their facility. Given the nature of a construction project and the definition of construction by Art Forehand, as hereinabove stated, pursuing financing arrangements is considered part of the construction of the facility. If DHRS was not satisfied with the response of King's counsel on August 15, 1979, it had the opportunity to commence an administrative complaint forthwith, rather than to wait another sixty (60) days, which makes this Court conclude that Art Forehand was satisfied that King was in a continuous construction mode. Therefore, it is the conclusion of this Court that King maintained continuous construction until October 2, 1979, at which point the filing of a Petition in Bankruptcy effectively prevented continuation of construction pending the outcome of the Bankruptcy proceedings and stayed any proceeding, the purpose of which would be forfeiture of the exemption from the Certificate of Need laws.

7. The Plaintiff has raised the issue of "equitable estoppel" as a bar to the actions of DHRS both as to the commencement of the project prior to July 1, 1979, and as to the issue of continuous construction thereafter. Since this argument was partially based upon DHRS Rules which have been declared invalid, the equitable estoppel argument is, thus, not as compelling. However, this Court would agree that the actions of DHRS and its Administrator, Art Forehand, in working with and cooperating with the Debtor in approving the plans for construction five (5) days prior to the deadline, together with King entering into a $390,000.00 construction contract, meet the requirements of equitable estoppel. Estoppel means nothing more than the application of the rules of fair play (*Town of Largo v. Imperial Homes Corp.*, 309 So.2d 571, Fla. 2d DCA 1975). Given the facts of this case and the testimony of Art Forehand, King certainly relied upon, changed its position and expended substantial sums of money, together with incurring additional liabilities, based upon DHRS' written notification of July 10, 1978, as to the project being under physical and continuous construction pursuant to final construction plans approved by DHRS prior to July 1, 1979. The estoppel argument is also valid with regard to maintaining continuous construction. Once King, in fact, commenced construction and went forward with the project, it would not be fair or reasonable for DHRS to be allowed to take away the exemption from the Certificate of Need without affording King every opportunity to build the facility or unless King did not make a reasonable effort to build the facility.

8. The Debtor, having preserved its exemption from the Certificate of Need Laws, is not without limitation as to construction of the facility. Given the fact that it has been approximately two and one-half (2½) years since the commencement of these Bankruptcy proceedings and the fact that a successor to King would complete the project, this Court will require the Plaintiff to submit to this Court within sixty (60) days a schedule for approval for completion of the project.