**In re Michael L. CHASE and Donna G. Chase, Debtors.**

**Bankruptcy No. 83–164.**

United States Bankruptcy Court, D. Vermont.

Dec. 30, 1983.

Timothy J. Wells, White River Junction, Vt., for debtors.

Gary T. Brooks, Norwich, Vt., for Nat. Bank of Lebanon.

Alan R. Medor, Rutland, Vt., Trustee, pro se.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

On August 22, 1983, the debtors filed a voluntary petition under chapter 7 of the Bankruptcy Code (Code). On October 11, 1983, the debtors filed a motion to determine the secured status of claimant, National Bank of Lebanon, New Hampshire (Bank). A hearing, after notice, was held on October 28, 1983. At that time the Bank was given permission to take the deposition of Robert Mansell, the officer of the Bank who closed the June 24, 1977 secured loan to the debtor. Mansell was deposed on November 11, 1983 and, although the Bank's attorney was requested to file a transcript by December 19, this has not been done.

Therefore, the court considers the evidence closed. From the records in the case and the testimony adduced at the hearing, the facts below have been established.

## FACTS

In 1977 the debtors obtained a consumer loan from the Bank and granted the Bank a security interest in their residence, a two-bedroom 1975 Skyline mobile home, serial number 0116–42OH, measuring 14' × 64'.

In 1979 the debtors refinanced the 1977 loan and signed a new security agreement with the intention that their residence collateralize the renewal loan.

No description of the collateral appeared on the face of the 1979 security agreement at the time it was executed by the debtors. Subsequently, the Bank described the collateral as a three-bedroom 1978 Skyline mobile home with expando room, serial number 26985, measuring 14' × 70'. This description, which appears on the face of the security agreement, varies from an accurate description of the debtors' residence in several respects: as to model year, serial number, number of rooms, and overall length.

The Bank filed financing statements containing the inaccurate description.

## DISCUSSION

The matter to be determined is whether the Bank obtained a security interest in the debtors' residence in connection with the renewal loan, and if so, whether the debtors may avoid the Bank's lien under section 544 of the Code. The trustee has taken no position in this matter.

Vermont Statutes, title 9A, section 1–201(37) defines a security interest as an interest in personal property or fixtures which secures payment or performance of an obligation. The test used to determine whether a transaction comes within the scope of Article 9 is whether the transaction is intended to have the effect of security. *First Vermont Bank & Trust Co. v. Village of Poultney,* 18 UCC Rep. 1301, 134 Vt. 28, 349 A.2d 722 (1975). Article 9 applies to consensual security interests. *National*

*Shawmut Bank of Boston v. New Amsterdam Casualty Co., Inc.,* 411 F.2d 843, 6 UCC Rep. 441 (1st Cir.1969), cited in *First Vermont Bank v. Village of Poultney, supra.* The 1979 security agreement evidences an intent by the instant parties that the underlying transaction have the effect of security; the transaction thus falls within the purview of Article 9.

■ Title 9A, section 1–103, makes the principles of law and equity, including estoppel, applicable to transactions falling within the purview of Article 9. Estoppel means nothing more than the application of the rules of fair play, *In re King Memorial Hospital, Inc.,* 19 B.R. 885, 891 (Bkrtcy.S.D. Fl.1982), and it prohibits an assertion of rights inconsistent with past conduct if the result would be unconscionable. *In re Griffiths,* 27 B.R. 873, 877 (Bkrtcy.D.Kan.1983).

The debtors testified at the hearing that they had "just refinanced the old [1977] note"; that they knew the Bank had a security interest in their residence in conjunction with the 1977 note; and that they assumed the Bank would continue to have a lien on their home under the new note, and had executed the 1979 security agreement in this state of mind.

■ The debtors may not now have it both ways: having reaped the benefits of their bargain with the Bank, the debtors may not now assert a technical rule of law to avoid the terms of their bargain. *See, Libco Corporation v. Charles W. Leigh (In re Reliable Manufacturing Corp.),* 17 B.R. 899 (D.C.N.D.Ill.1981). Having intended to grant the Bank a security interest in their residence, the debtors are estopped to deny the existence of the Bank's security interest therein, and may not be heard to complain that the Bank has no valid lien thereon.

The debtors argue that the security instrument created no security interest in the debtors' residence, that the instrument created a security interest in, if anything, the mobile home described on the face of the instrument, a 1978 unit which the debtors have never owned. However, it was at all times the intention of the debtors to give, and of the Bank to take, a security interest in the debtors' residence. Although the description, on the instrument, of the collateral as a 1978 unit raises the question as to whether the debtors intended at all times to reside in their 1975 unit or to buy and live in the 1978 unit described, the law presumes that the debtors as mortgagors intended to confer some benefit on the Bank as mortgagee at the time they executed the security instrument. 69 Am.Jur.2d § 303 at 139. In light of the surrounding circumstances, and in the absence of language in the instrument constraining the court to render the Bank's interest void, this court applies the general rule that a description of collateral should not be construed so as to defeat a mortgagor's lien. *Id.*

■ The debtors also argue that the Bank must perfect its security interest as a prerequisite to enforcing, as against the debtors interest in the collateral, its rights under the security agreement. However, an agreement creating a security interest remains valid, as between the debtor and the creditor, on the day of the filing of the petition for relief, notwithstanding any failure to perfect the security interest. *In re Carter,* 1 CBC 2d 381, 382 (Bkrtcy.D.Colo. 1980). The debtors misconstrue the purposes of the recordation of liens: recording gives notice to, and protection from, third parties. As neither the trustee nor any other third party has objected to the instant lien, whether the Bank did or did not perfect its security interest is immaterial to the determination of the secured status of the Bank.

■ As a final matter, there is no merit in the debtor's contention that the debtors may avoid the Bank's lien under Code section 544. Except as provided in Code section 522(h) with respect to certain involuntary transfers of property, the Code does not authorize debtor access to the lien avoidance powers specifically granted to the trustee in chapter 5 of the Code. As the instant facts do not trigger the operation of section 522(h), the instant debtors have no "strong-arm" power to avoid the lien on their residence. *See, In re Carter, supra.*

Since the security agreement constituted a voluntary transfer by the debtors they may not avoid the lien. Code § 522(g) and (h); *see also, In re McQueen,* 24 B.R. 110, 111 (Bkrtcy.D.Vt.1982).

■ For the reason that the contract creating the security interest in the debtor's residence remained valid as between the debtors and the Bank after the filing of the petition for relief, and there having been no relinquishment or waiver of lien by the Bank, the court concludes that the Bank currently has a valid security interest in the debtor's residence.

## ORDER

Now, therefore, in accordance with the foregoing,

IT IS ORDERED that the National Bank of Lebanon, New Hampshire, has a valid security interest in the Skyline mobile home occupied by the debtors.