In the Matter of HOWARD'S APPLIANCE CORP., Debtor.

Bankruptcy No. 886–61498–20.

United States Bankruptcy Court, E.D. New York.

Feb. 26, 1987.

Philip Irwin Aaron, P.C., Jericho, N.Y., for debtor-in-possession.

Kane, Kessler, Projansky, Preiss & Nurnberg, P.C., New York City, for Sanyo Elec., Inc.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge:

In this proceeding, Sanyo Electric Co., Inc. (hereinafter referred to as "Sanyo") seeks an order modifying the automatic stay to enable it to foreclose on certain of the debtor's inventory in which Sanyo alleges a security interest or an order directing the debtor to provide adequate protection to Sanyo as a condition for the use and sale by the debtor of the collateral. Sanyo contends that it is a secured creditor of the debtor and that its interest in the inventory is not being adequately protected.

## FACTS

### The Debtor's Retail Operation

The debtor, Howard's Appliance Corp. (hereinafter referred to as "Howard's") began operating a retail appliance store in Massapequa, New York (Nassau County) in 1973. That store continued to be the debtor's sole place of business until April of 1984 when it opened up a second store in Melville, New York (Suffolk County). Thereafter, in November of 1985, the debtor opened up a third store in Centereach, New York (Suffolk County). The Massapequa store was later sold by the debtor to an entity called "NS Appliance Corporation" in March of 1986. It is important to note that as of August, 1986 the Massapequa store continued to operate with a "Howard's" logo in the front of the store. In addition, the debtor continued to advertise the Massapequa store in a newspaper ad, holding that store out to the public as being one of the debtor's retail locations.

### The Security Agreement

On March 12, 1984, the debtor entered into a security agreement with Sanyo, giving Sanyo a security interest in all of the goods in the debtor's possession or thereafter acquired, which were manufactured, sold or acquired from Sanyo or bearing the trademark name "Sanyo" as well as proceeds from the sale or other disposition of those goods. This security interest was to secure payment by Howard's to Sanyo of all obligations then existing or thereafter arising by the debtor to Sanyo. Additionally, the security agreement provided that:

The collateral will be kept at the debtor's place of business located at the address as shown at the beginning of this agree-

ment; and that *there are no other places of business of debtor.* [Emphasis supplied].

The place of business listed at the beginning of the security agreement was the Massapequa store.

Sanyo filed a UCC–1 Financing Statement with the offices of the Nassau County Clerk and the New York State Secretary of State on March 30, 1984. At no time did Sanyo file a Financing Statement with either the Suffolk County Clerk's Office or the New Jersey Secretary of State's Office.

*The Shipment and Storage of Howard's Inventory*

Up until approximately six and a half years ago, the debtor stored some of its inventory in a small warehouse in Babylon, New York (Suffolk County), and up until five years ago it stored goods in a public warehouse in Baldwin, New York (Nassau County). Between 1981 and 1986, all of the debtor's inventory was stored either in a large basement under the Melville store or on the premises of the Massapequa store.

In the early part of 1986, the debtor began utilizing a public warehouse (the Donadio warehouse) which is located in New Jersey for the storage of inventory. Michael Howard, the president of the debtor, testified that whenever he needed to have the goods being held in this warehouse brought into his Melville store, he simply called the warehouse and the goods would thereafter be delivered to his store. He would then be billed for the resulting warehousing and trucking charges. Mr. Howard never physically went into New Jersey to pick up any of this inventory. In his testimony, Mr. Howard also stated that the debtor was "absolutely not" selling any goods out of New Jersey.

Sanyo made the first shipment of its goods from its New Jersey location to the Donadio warehouse in February of 1986. However, Mr. Howard testified that he never advised Sanyo in writing that its goods were going to be stored in a New Jersey warehouse.

Ed Toomey, the National Home Credit Manager for Sanyo, testified that the Credit Department of Sanyo never received a written notice from the debtor stating its intention to store goods in the Donadio warehouse in New Jersey. Mr. Toomey also testified that Mr. Howard never directly told him that the debtor had been storing Sanyo merchandise in New Jersey. Mr. Toomey only became aware that the goods Sanyo sold the debtor were being delivered to the New Jersey warehouse on "either the day of the order, two days after the filing of the petition when we sent out representatives to take an inventory." Sanyo's traffic manager only became aware of the storage of the goods in the Donadio warehouse when it was notified by one of the common carriers that the debtor had instructed the carrier to deliver a shipment of goods from Sanyo's New Jersey location to the Donadio warehouse. Acting on that information, the traffic manager then had a clerk type the bill of lading reflecting delivery to the Donadio warehouse.

Joel Stern, an independent sales representative used by Sanyo as a commission sales representative to sell to the debtor, did not know that any of Sanyo's products were being stored in the New Jersey warehouse until approximately August 8, 1986.

*The Bankruptcy Court Proceeding*

Howard's filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 6, 1986. Howard's has continued to operate the business as a debtor-in-possession pursuant to 11 U.S.C. § 1107.

By Order to Show Cause, dated August 14, 1986, Sanyo made a motion seeking relief from the automatic stay to enable it to foreclose on certain of the debtor's inventory to which it alleged a security interest.

Sanyo argues that it has a valid and properly perfected security interest in all of the collateral located in New York State and in all of the collateral located in New Jersey. Sanyo further argues that it is entitled to adequate protection of its interest in the collateral and that the automatic stay should be vacated since the debtor has

no equity in the collateral and this collateral is not necessary to an effective reorganization. Additionally, Sanyo argues that the automatic stay should be vacated for cause, based on the debtor's violation of the order to segregate proceeds and the failure to obtain a cash collateral order.

Howard's disputes Sanyo's contention by asserting that Sanyo should not be afforded adequate protection because it has failed to demonstrate that it has a valid and duly perfected security interest in the debtor's inventory since it failed to file a financing statement in Suffolk County, New York and the State of New Jersey. Consequently, it argues that Sanyo's motion for relief from the stay should be denied. In the alternative, it argues that should Sanyo's security interest be found to be properly perfected, Sanyo is nevertheless adequately protected, and that therefore, Sanyo's motion to lift the stay should be denied.

## ISSUES

In order to determine whether to grant Sanyo's motion to modify the automatic stay or, in the alternative, direct that its inventory be adequately protected, it is necessary to first determine whether Sanyo's collateral located in Suffolk County, New York and the Donadio warehouse in New Jersey is subject to a properly perfected security interest. If the collateral has not been properly perfected, then the creditor's motion must be denied on that basis. However, if Sanyo is a validly secured creditor of the debtor, then the court must determine whether Sanyo's interest in the inventory is adequately protected. If that is not the case, then the court must decide whether the stay should be vacated or whether an order directing adequate protection should be entered.

## DISCUSSION

*The Secured Status of the Goods Located in Suffolk County*

■ The Uniform Commercial Code § 9–401(1)(c) specifies the proper place to file a security interest in inventory.[1] U.C.C. § 9–401(1)(c) states that:

> The proper place to file in order to perfect a security interest ... in all other cases [than the scenarios specifically set forth in 9–401(1)(a) and (1)(b) is] in the department of state and in addition, if the debtor has a place of business in this state and in only one county of this state, also in the office of the filing officer of such county. N.Y.U.C.C. § 9–401(1)(c) (McKinney Supp.1987).

On March 30, 1984, the date the security interest was perfected, the debtor was operating only one store which was located in Massapequa, New York (Nassau County). This security interest was properly perfected when the creditor filed the financing statement in Nassau County and in Albany with the New York Secretary of State's Office. Even though the debtor opened up a second store in Melville, New York (Suffolk County) thus expanding its business bi-county the following month, there was no question that U.C.C. § 9–401(1)(c) was still being complied with.

The debtor claims that Sanyo was required to file a new financing statement in Suffolk County in March of 1986 when the debtor's Massapequa store was sold and its retail operations were consequently limited to Suffolk County. Since Sanyo never filed any financing statements in Suffolk County, it is argued that Sanyo does not have a valid security interest in the inventory located in Suffolk County according to the requirements set forth in U.C.C. § 9–401(1)(c).

The debtor's argument ignores the "saving" provision contained in § 9–401(3). This section states that:

> A filing which is made in the proper place in this state continues effective even though the debtor's residence or place of business or the location of the collateral or its use, whichever controlled the original filing, is thereafter changed.

1. The collateral which is the subject of the security interest in this case is "inventory" according to U.C.C. § 9–109(4) since it is being held for resale.

This provision "deals with change of residence or place of business or the location or use of the goods *after* a proper filing has been made.... The subsection is important only when local filing is required...." Official Comment to § 9–401, McKinney U.C.C. § 9–401 at 551 [Emphasis in original].

The Second Circuit in *Red Carpet Homes of Johnstown, Inc. v. Gerling (In Re Knapp)*, 575 F.2d 341 (2d Cir.1978) affirmed a district court decision holding that when a debtor changes his place of residence between the time a security interest in consumer goods attaches and the time of filing, he must file a document perfecting the security interest in the county of his *actual* residence at the time the security interest attached. *Id.* at 343.

Citing U.C.C. § 9–401(3), the Circuit Court stated that "the [U.C.C.] eschews any scheme that would require a secured party to maintain regular and continuing surveillance of the debtor. A security interest, once perfected by filing, remains effective regardless of the number of times or places the debtor or the collateral moves." *Id.*

In *Wapnick v. Symbax, Inc. (In Re Fitch Transp. Corp.)*, 28 B.R. 618 (Bkrtcy. E.D.N.Y.1983), Chief Judge Conrad B. Duberstein had to determine whether a creditor properly perfected a security interest in two taxicabs and two taxicab medallions by filing a financing statement in the New York Secretary of State's Office in Albany New York and in the County Clerk's Office in Queens County, the place where the debtor was doing business at the time the creditor acquired its interest in the debtor's property. *Id.* at 619. In *Fitch*, the plaintiff claimed that since the debtor's place of business moved from Queens County to Kings County, the security interest was not properly perfected because the debtor was no longer doing business in Queens County. *See id.* at 619–20. Chief Judge Duberstein applied U.C.C. § 9–401(3) and found that the fact that the debtor's business moved to Kings County after the security interest had been properly perfected was of

no consequence. *Fitch*, 28 B.R. at 620. "Since all competent evidence shows that defendants' security interests were acquired and properly perfected prior to any transfer of the debtor's place of business, they remain perfected." *Id.*

The facts of the *Fitch* case are fairly analogous to those presented in this matter. There is no question that Sanyo had a properly perfected security interest in the goods located in New York State prior to the time when the debtor sold its Massapequa store. The fact that the debtor subsequently limited its place of business only to Suffolk County does not render a once properly perfected security interest suddenly invalid. Pursuant to U.C.C. § 9–401(3) Sanyo's security interest in the inventory located in Suffolk County remained perfected at the time of and subsequent to Howard's consolidation in Suffolk County.

*The Secured Status of the Goods Located in New Jersey*

Uniform Commercial Code § 9–103(1)(b) governs the perfection of security interests in multiple state transactions. 12A N.J. Stat.Ann. § 9–103(1)(b) (West Supp.1986). The section states in pertinent part:

> Except as otherwise provided in this subsection, perfection and the effect of perfection or non-perfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected.

"Under 9–103(1)(b), whether or not the interest is perfected is determined by the law of the state where the collateral is located (a 'situs' rule) when the last event has occurred on which is based the assertion that the security interest is perfected or unperfected." J. White and R. Summers, Uniform Commercial Code § 23–18 at 966–967 (2d Ed.1980).

■ In this matter, despite the fact that the debtor has its principal place of business in New York State, the New Jersey Uniform Commercial Code governs since the collateral at issue is located in a ware-

house in New Jersey. Therefore, in order to properly perfect a security interest in this inventory, Sanyo should have filed a financing statement in New Jersey. 12A N.J.Stat.Ann. § 9–302 and § 9–401(1)(c) (West Supp.1986).[2]

A strict application of these provisions of the Uniform Commercial Code to the facts of this case would appear to indicate that Sanyo did not have a perfected security interest in the inventory located in the Donadio warehouse in New Jersey. However, our analysis of this matter cannot stop here. In deciding a U.C.C. issue, a court must always be cognizant of the important provision contained in § 1–103 of the U.C.C. This section provides that:

> [u]nless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, *estoppel,* fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provision. 12A N.J.Stat.Ann. § 1–103 (West Supp.1986) [Emphasis supplied].

■ In enacting this provision, the drafters of the Code specifically intended that courts continue to utilize equitable principles in creating exceptions to the strict application of U.C.C. provisions when necessary. *Morgan Guaranty Trust Co. of*

*New York v. American Savings and Loan Ass'n,* 804 F.2d 1487, 1495 (9th Cir.1986). "Judges have a duty to consider the equities of a case unless equitable principles have been displaced ... and 'nothing short of an expressed code provision limiting plaintiff's remedy' demonstrates displacement." *Id.* at 1495 (citing *Hechter v. New York Life Ins. Co.,* 46 N.Y.2d 34, 39, 385 N.E.2d 551, 554, 412 N.Y.Supp.2d 812, 815 (1978)). In light of this provision, the applicability of the doctrine of equitable estoppel will now be examined in order to determine whether it should be applied to prevent Howard's from claiming that the security interest in the goods located in the Donadio warehouse is unperfected.

■ The doctrine of estoppel is applicable when a party rightfully relies upon the words or acts of another party and in "so relying changes his position to his injury." *Metropolitan Life Ins. Co. v. Childs Co.,* 230 N.Y. 285, 292, 130 N.E. 295, 298 (1921). The necessary elements to invoke the doctrine of equitable estoppel are as follows:

1. An act constituting a concealment of facts or a false misrepresentation;

2. An intention or expectation that such acts will be relied upon;

3. Actual or constructive knowledge of the true facts by the wrongdoer;

4. Reliance upon the misrepresentations which causes the innocent party to

---

2. The argument that the facts of this case fall within the "saving provision" contained in U.C.C. § 9–103(1)(d) is without merit. The section provides as follows:

> When collateral is brought into and kept in this state while subject to a security interest perfected under the law or jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by Part 3 of this Article to perfect the security interest,
>
> (i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal;

> (ii) if the action is taken before the expiration of the period specified in subparagraph (i), the security interest continues perfected thereafter;
>
> (iii) for the purpose of priority over a buyer of consumer goods (subsection (2) of Section 9–307), the period of effectiveness of a filing in the jurisdiction from which the collateral is removed is governed by the rules with respect to perfection in subparagraphs (i) and (ii). 12A N.J.Stat.Ann. § 9–103(1)(d)

The inventory at issue in this portion of the opinion has never physically been in the state of New York; therefore the terms of the statute are inapplicable to such inventory. Even if the goods had been brought into and kept in the state and then removed to New Jersey, the four-month time period contemplated in subdivision (d)(i) has expired, the result being that this security interest would now be deemed unperfected.

change its position to its substantial detriment. *Special Event Entertainment v. Rockefeller Center, Inc.*, 458 F.Supp. 72, 76 (S.D.N.Y.1978).

■ It is germane to the principle of equitable estoppel that a party need not have engaged in some active conduct, but could have merely concealed a material fact which would give rise to the notion that the facts are otherwise than as asserted. *Deutsch v. Health Ins. Plan of Greater New York*, 573 F.Supp. 1433, 1440 (S.D.N.Y.1983).

According to New York common law, estoppel by silence may be invoked when (1) there is a duty to speak; (2) the party being estopped has had an opportunity to speak and (3) there is an injury to the party seeking to invoke the doctrine of estoppel as a result of his failure to speak. *Ellison Assocs. v. Eastwood Management Corp. (In re Ellison Assocs.)*, 13 B.R. 661, 675–676 (Bkrtcy.S.D.N.Y.1981), *aff'd*, 63 B.R. 756 (S.D.N.Y.1983).

■ It must be emphasized that estoppel is a doctrine that should not be applied by a court haphazardly. Rather it is a "flexible doctrine" which should be applied when the equities of the situation necessitate its implementation. *In re Reading Co.*, 404 F.Supp. 1249, 1251 (E.D.Pa.1975). A court should not invoke the doctrine of equitable estoppel when it is to be used as a "sword" by a litigant. Rather, equitable estoppel should only be applied when a party seeks to use it as a "shield" to prevent the wrongdoer from gaining an unfair advantage. Equitable estoppel should be "limited in its effects to measures necessary to place the parties in the same relative positions they would have enjoyed if the grounds for the estoppel had not existed." *New York State Energy Research and Dev. Auth. v. Nuclear Fuel Servs., Inc.*, 561 F.Supp. 954, 965 (W.D.N.Y.1983). The bankruptcy court in *Schatzman v. Dep't of Health and Rehabilitated Servs., State of Florida (In re King Memorial Hospital, Inc.)*, 19 B.R. 885 (Bkrtcy.S.D. Fla.1982) said it best when it observed that "[e]stoppel means nothing more than the

application of the rules of fair play." *Id.* at 891.

Sanyo argues that despite the fact that the security interest could be deemed perfected under a strict application of the pertinent U.C.C. provisions, the court should hold that the debtor is estopped from challenging the perfection of Sanyo's security interest in the New Jersey inventory since it was the debtor's conduct or lack thereof which caused Sanyo not to file a financing statement in New Jersey. In light of the United States Supreme Court's pronouncement that the bankruptcy court has to consider the equities of a situation in applying the law to avoid an inequitable result, *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) and U.C.C. § 1–103, this court has an obligation to carefully examine whether the doctrine of equitable estoppel should be used to prevent Howard's from challenging the perfection of Sanyo's interest in the New Jersey inventory.

In *In re Rule*, 38 B.R. 37 (Bkrtcy.D.Ver. 1983), the court had to determine whether a debtor was estopped from denying the validity of a bank's lien when it caused the bank to fail to perfect its security interest in certain vehicles pursuant to Vermont law. The debtor was an automobile mechanic employed on a wage basis at a service station. He also had a partnership interest with the service station operator at the time this Chapter 7 petition was filed. *Id.* at 40. Prior to the date the petition was filed, the debtor granted the bank a security interest in a Honda motorcycle and a Ford wrecker. *Id.* Although the Bank timely filed the financing statements, it failed to record its lien pertaining to the Honda on the certificate of title since the debtor never registered the vehicle with the Department of Motor Vehicles after the loan transaction was consumated. *Id.*

At the beginning of its opinion, the court noted that the Bank failed to perfect its security interest in the Honda under a state statute which provides that the recordation of liens on a certificate of title is a prerequisite to the perfection of such liens

on motor vehicles. *Id.* However, the court found that the debtor, by having granted a lien in a Honda motorcycle and then by failing to register that vehicle, thwarted the efforts of the Bank to have a lien recorded on the certificate of title. Consequently, the court held that the debtor was estopped from denying the validity of the Banks' lien. The court observed that estoppel "prohibits an assertion of rights inconsistent with past conduct if the result would be unconscionable.... The debtor may not have it both ways: having reaped the benefits of his bargain with the Bank, the debtor may not now assert a technical rule of law to avoid the terms of his bargain when compliance with the rule of law was made impossible by the debtor's failure to register the vehicle." *Id.* at 40–41. [Citation omitted].

In *In re Chase,* 37 B.R. 345 (Bkrtcy.D. Ver.1983), the court had to determine whether the debtors should be estopped from denying the existence of a Bank's security interest in a mobile home. In *Chase,* the debtors obtained a consumer loan from the Bank and gave the Bank back a security interest in their residence, a "two-bedroom 1975 Skyline mobile home, serial number 0116–420H, measuring 14′ × 64′." *Id.* at 346. In 1979, the debtors refinanced this 1977 loan and signed a new security agreement intending that their residence collateralize this renewal loan. There was no description of the collateral on the face of the 1979 security agreement at the time it was executed by the debtors. Subsequently, "the Bank described the collateral as a three-bedroom 1978 Skyline mobile home with expando room, serial number 26985 measuring 14′ × 70′." *Id.* This description differs from an accurate description of the debtors' residence in several key respects. The Bank then filed financing statements containing this inaccurate description. *Id.*

The debtors argued that this second security interest did not create a security interest in their residence, instead the instrument created a security interest in the 1978 mobile home described on the face of the instrument, which the debtors never

owned. *Id.* at 347. The debtors testified at the hearing that "they had 'just refinanced the old [1977] note'; that they knew the Bank had a security interest in their residence in conjunction with the 1977 note; and that they assumed the Bank would continue to have a lien on their home under the new note, and had executed the 1979 security agreement in this state of mind." *Id.* The court held that the debtors could not assert "a technical rule of law to avoid the terms of their bargain" and found that they were estopped from denying the existence of the Bank's security interest. *Id.*

In *In re Pubs of Champaign,* 618 F.2d 432 (7th Cir.1980) the court utilized the doctrine of estoppel to cure defects in a security interest where the parties giving the security interest transferred title in the collateral to a third party before the security interest had attached. The court estopped the bankruptcy trustee of the third party from denying the attachment and consequently enforced the security agreement. The court reasoned that:

> [t]he Bank did not know of the premature transfer to the [debtor] and did not have any way of determining [that a transfer had been made] since such a transfer would not have been a matter of public record. The Bank relied to its detriment on [the debtor's] silence when it advanced the $60,000 and when it renewed the loan. Since all elements of an estoppel are present, [the debtor] is estopped to deny the validity of the Bank's security interest.... *Id.* at 439.

▪ Having established that courts will invoke the doctrine of estoppel to prevent a party from denying the creation or perfection of a security interest when the equities warrant such action, we inquire whether the facts in this case warrant an application of this equitable remedy.

▪ The record indicates that Howard's concealed important facts or made a false misrepresentation about material facts. It is evident that the debtor concealed the fact that it was storing the subject invento-

ry in the Donadio warehouse in New Jersey.

Mr. Howard's testimony that he never actually advised Sanyo in writing that he was going to store goods or that the goods were ever actually stored in the New Jersey warehouse is a clear indication of such concealment. The testimony of Ed Toomey, the National Home Credit Manager for Sanyo, that Sanyo's credit department never received written notice from the debtor stating its intention to store goods in the New Jersey warehouse further evidences that Howard's concealed the critical fact that it was storing goods in New Jersey. Additionally, Joel Stern, the independent sales representative used by Sanyo, did not become aware of the storage of goods in New Jersey until approximately six months after the time in which Sanyo made its first shipment to the Bonadio warehouse. In fact, no highly placed official from Sanyo was ever directly told by Mr. Howard that its goods were going to be stored in the Donadio warehouse in New Jersey. Sanyo only became aware of this storage arrangement through conversations with third parties, such as common carriers of the goods. This court finds that this lack of communication by the debtor to Sanyo constitutes a concealment of a material fact which is sufficient to meet this first prerequisite for the application of the doctrine of equitable estoppel.

Additionally, it must be clear that the debtor expected that its concealment of the fact that the inventory was being stored in the New Jersey warehouse would be relied upon by Sanyo in such a way as to dissuade them from filing a financing statement in New Jersey. A careful examination of the record before this court leads to the inescapable conclusion that Howard's was engaging in a method of operation which would not cause Sanyo to file in New Jersey. Sanyo's inactivity enabled Howard's to seek an unfair advantage in the bankruptcy court arena.

The debtor has been in operation since 1973. It is not clear where they stored their inventory prior to the beginning of this decade. However, there was no evidence presented to this court to indicate that Howard's ever utilized the services of a public warehouse in New Jersey or any other state outside of New York prior to the early part of 1986, approximately six months before its filing of a Chapter 11 petition. This fact, coupled with Howard's reluctance to inform Sanyo that its inventory was being stored in the New Jersey warehouse, leads this court to believe that Howard's acted with the expectation that Sanyo would not perfect its security interest in this inventory by filing a financing statement in New Jersey. As long as Sanyo's principals were unaware that its goods were being stored in the New Jersey warehouse, they could take no action to protect their interests in these goods.

To invoke the doctrine of equitable estoppel, it also must be shown that the wrongdoer had actual or constructive knowledge of the true facts. It is clear that Howard's had actual knowledge of the fact that the inventory at issue here was being stored in a public warehouse in New Jersey.

Finally, the party seeking to invoke the doctrine of equitable estoppel must demonstrate that it relied upon the misrepresentation or concealment of material fact and that it changed its position to its substantial detriment by such reliance. Since Sanyo did not become aware that its inventory was being stored in New Jersey until the time in which Howard's filed its Chapter 11 petition, it had no opportunity to perfect its security interest in those goods by filing a financing statement in New Jersey. Once the petition had been filed, Sanyo was prevented from perfecting its security interest in these goods due to the operation of 11 U.S.C. § 362. By concealing these material facts from Sanyo, Howard's prevented Sanyo from protecting its security interest by filing in New Jersey.

Based on the foregoing analysis, Howard's will be estopped from denying the New Jersey perfection of Sanyo's security interest.

As a secured creditor, Sanyo is entitled to an order vacating the automatic stay

pursuant to 11 U.S.C. § 362(d) if its interest is not being adequately protected. As an alternative remedy, Sanyo would be entitled to adequate protection of its interest pursuant to 11 U.S.C. § 361 if the stay is not vacated. Since the major portions of the papers submitted and the arguments and testimony heard are directed to the perfection of Sanyo's security interest, there is insufficient evidence to determine the extent to which the debtor may be able to provide adequate protection in order to avoid having the stay vacated.

We therefore conclude 1) that Sanyo has a validly perfected interest in the goods it supplied to the debtor and in the proceeds therefore and 2) that Sanyo is entitled either to adequate protection or a vacating of the § 362 stay. A hearing will be held before the Honorable Robert John Hall, to whom this case has been assigned since the submission of this matter, on at least eight (8) days notice by either side, to determine the extent to which the debtor may be able to provide Sanyo with adequate protection in lieu of having the stay vacated.

SO ORDERED.