**In re Dong Sup SONG and Soonie Kwon Song d/b/a Song's Fashions and d/b/a Classic Shoes d/b/a Song and Son Shoes, Debtors.**

**Chang Keun PARK and Young Ok Park, Plaintiffs,**

**v.**

**Dong Sup SONG and Soonie Kwon Song d/b/a Song's Fashions and d/b/a Classic Shoes d/b/a Song and Son Shoes, Defendants.**

**Bankruptcy No. 3–85–00009.**
**Adv. No. 3–85–0934.**

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 26, 1986.

Brabson & Kite, Charles W. Kite, Sevierville, Tenn., for plaintiffs.

Morrison, Morrison, Tyree & Dickenson, Thomas H. Dickenson, Knoxville, Tenn., for defendants.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is the extent to which a state court judgment in favor of the plaintiffs operates under the principles of collateral estoppel to preclude the litigation in this court of issues relevant to a dischargeability determination under § 523(a)(2)(A) of the Bankruptcy Code.[1] Plaintiffs have moved

---

1. This section provides:
   (a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—
   
   .    .    .    .    .

   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
   (A) false pretenses, a false representation, or actual fraud, other than a statement re-

for summary judgment based upon the state court judgment.

## I

Plaintiffs obtained a $26,335.00 judgment against the debtors in the Chancery Court for Davidson County, Tennessee. In that state court action plaintiffs sought damages in connection with the sale by the debtors to plaintiffs of certain assets of a business known as Fashions by Song. In the complaint initiating the action plaintiffs alleged that the debtors "represented to Plaintiffs that a ten (10) year lease was a part of the assets to be transferred to Plaintiffs" and that "[t]his representation was memorialized in an undated paper writing which acknowledges receipt of the Five Hundred ($500.00) Dollars earnest money, and Seventeen Thousand ($17,000.00) Dollar purchase price." Ex. 2 to Plaintiffs' Motion for Summary Judgment, ¶ 5 (filed October 25, 1985). Plaintiffs further alleged that the debtors "fraudently [sic] and/or in a grossly negligent manner represented to Plaintiffs that part of the assets included in [sic] the ten (10) year lease of the premises at a fixed rate when, in fact, there was no ten (10) year lease and the owner would neither agree to extend the present lease nor agree to a ten (10) year lease." *Id.* at ¶ 12.

In his memorandum detailing the findings of fact and conclusions of law upon which he based judgment for plaintiffs, the Chancellor held:

> The Songs breached the contract of sale and are liable to the Parks for the $19,500 purchase price paid. The Songs misrepresented to the Parks that the Parks' occupancy had been approved and are liable to the Parks for the $4,000 moving expenses, $900 remodeling expenses and $1,935 in sales that the Parks made for the Songs. The Parks' other damage claims against the Songs are denied.

Ex. 3 to Plaintiffs' Motion for Summary Judgment, at 8–9.

## II

In order for the doctrine of collateral estoppel to preclude relitigation of an issue in the context of a § 523 dischargeability determination, the court must find (1) that the issue sought to be precluded is the same as that involved in the prior action, (2) that it was actually litigated, (3) that it was determined by a valid and final judgment, and (4) that the determination was essential to the prior judgment. *In re Ross*, 602 F.2d 604, 608 (3rd Cir.1979), (cited with approval in *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981).

To except a debt from discharge under § 523(a)(2)(A) a creditor must prove five elements:

(1) a materially false representation by the debtor;

(2) the debtor's knowledge of the falsity of the representation; [2]

(3) the debtor's intent to deceive (i.e. to induce action by the creditor in reliance on the representation);

(4) the creditor's reasonable reliance thereon; and

(5) a proximately resulting loss to the creditor.

William L. Norton, Jr., 1 *Norton Bankruptcy Law and Practice* § 27.41 (1981).

Upon a careful review of the Chancellor's findings, this court must conclude that

specting the debtor's or an insider's financial condition....

11 U.S.C.A. § 523(a)(2)(A) (West Supp.1985).

**2.** There is substantial authority that a reckless disregard as to the truth or falsity of the representation also suffices. *See First National Bank of Red Bud v. Kimzey*, 761 F.2d 421 (7th Cir. 1985); *Birmingham Trust National Bank v. Case*, 755 F.2d 1474 (11th Cir.1985). *See also Houtman v. Mann*, 568 F.2d 651 (9th Cir.1978) (decided under statutory predecessor to § 523(a)(2)(A)). *Contra Heinold Commodities & Securities, Inc. v. Hunt*, 30 B.R. 425, 437 n. 17 (Bankr.M.D.Tenn.1983).

The Sixth Circuit has cited and applied *Houtman* in the context of concluding that "gross recklessness" suffices for purposes of determining under § 523(a)(2)(B) the nondischargeability of a debt arising from the use of a false financial statement. *Martin v. Bank of Germantown*, 761 F.2d 1163, 1167 (6th Cir.1985).

only issues (1), (3), and (to a partial extent) (5) were actually decided in the state court adjudication.

As noted, plaintiffs alleged in their state court complaint that the debtors "breached their agreement to transfer said assets including a ten (10) year lease of premises." Ex. 2, ¶ 14. The Chancellor concluded that the debtors "breached the contract of sale and are liable to the [plaintiffs] Parks for the $19,500 [3] purchase price paid." Ex. 3, at 8. Clearly, in rendering this portion of the judgment for breach of contract the Chancellor did not address or decide any issues relevant to a § 523(a)(2)(A) determination of dischargeability.

However, plaintiffs also alleged that the debtors "fraudently [sic] and/or in a grossly negligent manner represented to Plaintiffs that part of the assets included in [sic] the ten (10) year lease of the premises at a fixed rate when, in fact, there was no ten (10) year lease...." Ex. 2, ¶ 12. The Chancellor held that the debtors "misrepresented to the Parks that the Parks' occupancy had been approved and are liable to the Parks for the $4,000 moving expenses, $900 remodeling expenses and $1,935 in sales that the Parks made for the Songs." Ex. 3, at 8.

Thus, the Chancellor clearly determined the existence of a false representation. With respect to materiality, the Chancellor found that, of the terms of sale, the "most important" was a "condition that the Parks would be able to obtain a 10-year lease on the property." Ex. 3, at 1–2.

However, the Chancellor cannot be said to have determined that the debtors made the representation with either knowledge of its falsity or reckless disregard for its truth or falsity. The Chancellor concluded that the debtors "intentionally *or careless-ly* [4] misled the Parks into believing that all necessary steps had been taken to secure the Parks' 10-year occupancy." Ex. 3, at 7 (emphasis supplied). This finding, however, is as consistent with a conclusion that the representation was merely negligently [5] made as it is with a conclusion that the representation was made with knowledge or reckless disregard. "The burden is on the party asserting preclusion to show actual decision of the specific issues involved." C. Wright, A. Miller, & E. Cooper, 18 *Federal Practice and Procedure* § 4420 at 185 (1981). "[T]he opaque judgment fails to preclude relitigation." *Id.* at 184. This court cannot conclude that the Chancellor actually decided the issue of whether the debtors made the false representation with either knowledge of its falsity or reckless disregard for its truth or falsity.

The Chancellor did decide that the debtors intended to induce the plaintiffs' action in reliance on the representation. This is clear from the Chancellor's conclusion that "the Songs were eager to sell their disappointing business ... and intentionally or carelessly misled the Parks into believing that all necessary steps had been taken to secure the Parks' 10-year occupancy." Ex. 3, at 7.

While the Chancellor did address the issue of reliance [6] to some extent, he made no clear finding regarding the issue of the reasonableness of the plaintiffs' reliance. First, his discussion of reliance actually arose in the context of deciding whether the owner of the property could be held under the doctrine of apparent or ostensible authority to have permitted his rental agent to have entered into a binding lease

---

**3.** The portion of the state court record submitted does not make clear the reason for the $2,000.00 difference between the $17,500.00 figure in the plaintiffs' state court complaint and the $19,500.00 award of damages.

**4.** "Carelessly" is defined as "[w]ithout care ... [n]egligently; denoting the absence of ordinary care." Black's Law Dictionary 268 (rev. 4th ed. 1968).

**5.** Tennessee law recognizes a cause of action for negligent misrepresentation. *Guilbert v. Phillips Petroleum Company*, 503 F.2d 587, 591 (6th Cir. 1974) (citing *Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W.2d 780, 784 (1970)).

**6.** "The move was prompted solely by Song's repeated 'no problem' assurance." Ex. 3, at 7.

with the plaintiffs.[7] Ex. 3, at 4–7. Secondly, while he found that "[t]here are several factors which make the Parks' belief that there is a binding lease unreasonable," Ex. 3, at 6, he also found that "there are a number of factors which could lead a reasonable person to believe that a binding lease had been executed." Ex. 3, at 5. The Chancellor cannot be said to have actually decided the issue of the reasonableness of plaintiffs' reliance.

Finally, with respect to the amount of the plaintiff's loss proximately resulting from the false representation, this court is persuaded that the Chancellor actually decided that plaintiffs sustained a loss of at least $4,900.00.[8]

 In conclusion, in consequence of the Chancellor's ruling in state court, the debtors are precluded under the principle of collateral estoppel from relitigating the issues of whether they made a materially false representation to the plaintiffs, whether they intended to induce action by the debtors in reliance on the representation, and whether the plaintiffs sustained a loss of not less than $4,900.00 as a proximate result of the false representation. Plaintiffs are entitled to a partial summary judgment only to this extent. Bankruptcy Rule 7056.

---

7. The state court action also involved a claim by plaintiffs against the owners of the store premises for specific performance of an allegedly binding lease agreement and for damages arising from interference with their occupancy. Ex. 3, at 4.

8. The Chancellor held that the debtors were "liable to the Parks for the $4,000 moving expenses, $900 remodeling expenses and $1,935 in sales that the Parks made for the Songs." Ex. 3, at 8–9. The record before this court does not make satisfactorily clear how the "$1,935 in sales" may be said to constitute damages proximately caused by the false representation.

For the sake of absolute clarity, this court notes that plaintiffs are, of course, not precluded from attempting to demonstrate at trial damages in excess of the $4,900.00 as a result of the false representation.