**In re W.K. MONTGOMERY, d/b/a W.K. Montgomery Construction Co., Debtor.**

**Bankruptcy No. 87–50565–C–7.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Dec. 7, 1987.

Randolph N. Osherow, San Antonio, Tex., for debtor.

David S. Gragg, San Antonio, Tex., for movant.

## MEMORANDUM OPINION AND ORDER

LEIF M. CLARK, Bankruptcy Judge.

██ W.K. Montgomery was in the construction business. He filed for bankruptcy under chapter 7. In his schedules, he listed under property claimed as exempt (Schedule B–4), the following real property:

1. Homestead—1.7 acres, rural homestead, Kerr County, 505 N. Main Street, Ingram, Texas 78025;

2. Meadows or River Hill, No. 2, Lots 1–20 and 22–27;

3. Village West Industrial Phase I, Lots 13 and 14;

4. Town & Country Center, one-fourth interest.

Tracts two, three and four in the above list had a total value, according to the debtor's schedules, of $1,238,000.00. The debtor elected the state exemptions under Section 522(b)(2). He designated the Kerr County property as his homestead. No evidence was put on to indicate that the property selected by the debtor was not his homestead, so the court presumes that this property is in fact being used by the debtor as his homestead. Having made that presumption, the remaining tracts may not, as a matter of Texas law, be treated as exempt. TEX.PROP.CODE, § 41.002 (West pamphl. ed. 1985); *Burk Royalty Co. v. Riley*, 475 S.W.2d 566, 568 (Tex.1972); *Wootton v. Jones*, 286 S.W. 680, 687 (Tex. Civ.App.—Austin 1926, writ dism'd) (a person may not have more than one homestead).[1]

---

1. Section 41.001 of the Texas Property Code is entitled "Interests in Land Exempt from Seizure." Section 41.001(a) states that:

    (a) a homestead and one or more lots used for a place of burial of the dead are exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property.

    TEX.PROP.CODE, § 41.001(a) (West pamph. ed. 1985). Section 41.002 provides in pertinent part:

    (a) if used for the purpose of an urban home or as a place to exercise a calling or business in the same urban area, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than one acre of land which may be in one or more lots, together with any improvements thereon.

    (b) if used for the purposes of a rural home, *the homestead shall consist of:*

■ The debtor filed motions pursuant to Section 522(f)(1) to avoid two judgment liens, one against Alamo Iron Works ("AIW") and the other against Ingram Ready Mix ("IRM"). Neither of these creditors had objected to the debtor's exemption claims within the thirty day period prescribed by Bankruptcy Rule 4003(b). Both objected to the debtor's lien avoidance actions, however. The debtor acknowledges that his ability to prevail on his lien avoidance action turns solely on the question whether AIW and IRM are foreclosed from challenging the exempt nature of the properties in question by their failure to timely object to the debtor's exemption claims. This court holds that they are not so foreclosed and that their judgment liens on the debtor's real estate (save for the Kerr County property claimed as homestead) may therefore not be avoided.

## DISCUSSION

### DOES A CREDITOR'S FAILURE TO OBJECT TO DEBTOR'S EXEMPTIONS WITHIN THIRTY DAYS AFTER THE § 341 MEETING OPERATE AS AN ESTOPPEL TO PREVENT THAT CREDITOR FROM RAISING THE DEBTOR'S ENTITLEMENT TO THE EXEMPTION IN THE DEBTOR'S LIEN AVOIDANCE ACTION UNDER § 522(f)?

In *In re Mitchell*, this court recently held that a judgment lien creditor could object to a chapter 13 debtor's lien avoidance action on grounds that the property in question is not exempt under the exemption scheme selected by the debtor, even though the creditor had not previously objected to the debtor's exemption claims. *In re Mitchell*, 80 B.R. 372, 380 (Bankr.W.D. Tex., November 30, 1987). Here, that hold-

(1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or
(2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.
TEX.PROP.CODE, § 41.002 (West pamph. ed. 1985).

ing is extended to apply to chapter 7 cases as well.

### I. The nature of a lien avoidance action under § 522(f)

■ Section 522(f) provides in pertinent part as follows:

... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption *to which the debtor would have been entitled under subsection (b) of this section,* if such lien is—

(1) a judicial lien;

.    .    .    .    .

11 U.S.C.S. § 522(f)(1) (Norton pamphl. ed. 1987) (emphasis added). To reiterate *Mitchell,* the avoidance power is an extraordinary device implemented by Congress in the 1978 Code to enhance the debtor's fresh start. It permits a debtor to select an exemption *ex post facto,* then to eliminate an otherwise valid judicial lien impairing that exemption. Consistent with this policy, Section 522(f) authorizes avoidance of liens to facilitate the debtor's fresh start, but limits the availability of the avoidance powers to those exemptions *"to which the debtor would have been entitled under subsection (b) of this section* [Section 522]." 11 U.S.C. § 522(f) (Norton pamphl. ed. 1987). The Fifth Circuit has advised that:

Section 522(f) merely gives the debtor the power to avoid a lien on property to the extent that the lien impairs an exemption to which the debtor would have been entitled under § 522(b) ... Therefore, one must look to § 522(b) to determine the exemptions.

*Matter of Allen,* 725 F.2d 290, 292–93 (5th Cir.1984).[2] Thus, one element of the debt-

2. In *Allen,* the Fifth Circuit noted that property subject to a consensual lien is, by definition, not exempt under the Texas exemption statutes. Therefore, if the debtor elected the Texas exemptions, the property there in question "would not be 522(b) exempt property and would not be exempt under the section (f) savings clause." *Id.* When the Fifth Circuit next visited the issue, it upheld its prior decision in *Allen.* Though it questioned *Allen*'s interpretation of

or's cause of action under Section 522(f) is that the subject property is otherwise exempt under Section 522(b). *In re Shands,* 57 B.R. 49, 50 (Bankr.D.S.C.1985). If the debtor has elected the state exemption scheme (and he or she must make an election under Section 522(b)), then the debtor must establish as part of his or her lien avoidance action that the subject property would be exempt under state law.

Notwithstanding the language of the statute, the clear import of which is to place the burden of proof with respect to this element on the debtor; at least one court has concluded that a failure to object under Bankruptcy Rule 4003(b) would be fatal to a judgment lien creditor's subsequent attempts to defend on grounds of invalidity of the exemption under Section 522(b). *In re Hahn,* 60 B.R. 69, 76 (Bankr. D.Minn.1986); *but see In re Rollins,* 63 B.R. 780, 783 (Bankr.E.D.Tenn.1986). The *Hahn* court reasoned that

> The Congressional intent to undo the "race to the Courthouse," and the lack of a more involved statutory test, evidence Congress' intent to prohibit the relitigation of settled exemption disputes in the context of a § 522(f)(1) lien avoidance motion. Simply stated, if a judgment lien creditor does not properly litigate a debtor's entitlement to the underlying exemption within the time frame established under BANKR.R. 4003(b) ... he is estopped from litigating that issue in the debtor's ensuing motion under § 522(f)(1).

*In re Hahn,* 60 B.R. 69, 76 (Bankr.D.Minn. 1986); *but see In re Rollins,* 63 B.R. 780, 783 (Bankr.E.D.Tenn.1986). However, the "settled exemption disputes" to which the *Hahn* court makes reference do not in fact settle the issues raised under Section 522(f), as an examination of Section 522(*l*) and its implementing rule, Bankruptcy Rule 4003(b), reveals.

■ Section 522(*l*) provides that:

The debtor shall file a list of property that the debtor *claims* as exempt under subsection (b) of this section.... Unless a party in interest objects, the property *claimed as exempt on such list* is exempt.

11 U.S.C. § 522(*l*) (Norton pamphl. ed. 1987) (emphasis added). Bankruptcy Rule 4003(b) was written to implement Section 522(*l*). *In re Starns,* 52 B.R. 405, 410 (S.D.Tex.1985). It provides, in pertinent part, as follows:

> The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list unless, within such period, further time is granted by the court....

Bankruptcy Rule 4003(b) (Norton pamphl. ed. 1987). Thus, an otherwise nonexempt item of property is deemed exempt under Section 522(*l*) if no one objects within the time frame established by Bankruptcy Rule 4003(b). The debtor's entitlement to the exemption thereby becomes invulnerable to later attack. *See In re Payton,* 73 B.R. 31, 31 (Bankr.W.D.Tex.1987).

■ A lien avoidance action, however, does not place in issue the debtor's *entitlement* to the exemption so claimed. It focuses instead on entitlement to lien avoidance. Section 522(f) by its terms restricts the availability of lien avoidance to property *otherwise exempt under Section 522(b).* An exemption which the debtor acquires solely by default pursuant to Section 522(*l*) is *not* necessarily "an exemption to which the debtor would have been entitled under subsection (b) of this section [Section 522]." 11 U.S.C. § 522(f) (Norton pamphl. ed. 1987). Section 522(*l*) therefore does not satisfy the Section 522(b) eligibility element of a lien avoidance action. *See In re Allen, supra; In re Mitchell,* 80 B.R. 372, 375 (Bankr.W.D.Tex.1987). By the same token, a determination under Section 522(f) that property is ineligible for *lien avoidance* does not mean that the property is then

Texas law, it left undisturbed *Allen*'s analysis of Section 522(f). *Matter of Bessent,* 831 F.2d 82, 83 n. 3 (5th Cir.1987).

ineligible for *exemption*. The debtor's entitlement to the exemption remains undisturbed regardless of the outcome of the lien avoidance action.[3]

This interpretation of Section 522(f) recognizes that Section 522(f) and Section 522(b) on the one hand and Section 522(*l*) on the other operate independently of one another. Section 522(b) defines those exemptions to which the debtor is *in fact* entitled. These are the exemptions which, consistent with the legislative history, are worthy of the extraordinary protection of Section 522(f) *vis-a-vis* certain kinds of secured creditors. Section 522(*l*) serves an entirely different function, that of promptly liberating property the debtor wishes to keep for his "fresh start" from the continuing administration of the bankruptcy court. *In re Novotny*, 17 B.R. 196, 198 (Bankr.D. S.D.1982) ("any delay in a determination of exemptions only hinders a debtor's fresh start"). That the property might not be eligible for lien avoidance (because it does not qualify under Section 522(b)) certainly hinders the debtor's fresh start, but only because there are congressional limits on the fresh start to which the debtor is entitled built into Section 522(f). *See Matter of Allen, supra.* The enunciated policy of prompt determination is unaffected by the fact that the debtor who later wants to avoid a creditor's lien may not be able to get past Section 522(b).[4]

**3.** Subsection (f) of Section 522 makes no reference to subsection (*l*). Neither does subsection (b). By the same token, subsection (*l*) does not purport by its terms to qualify property deemed exempt as "522(b)" exempt property. Subsections (f) and (b) on the one hand, and subsection (*l*) on the other, function independently of one another.

**4.** In a previous opinion addressed to this issue, this court noted that

> In a very real sense, it might be said that there are *two* independent schemes for assisting the debtor in achieving his fresh start *vis-a-vis* exemptions. The first, typified by Section 522(*l*), is aimed principally at freeing select assets from the general creditor body. The second, more restricted in scope and typified by Section 522(f), aims at liberating certain assets from certain kinds of secured creditors. Secured creditors have little justification for

▆ It is also entirely appropriate that a debtor about to eliminate another's property rights be put to his or her proof, and not be permitted to rely on a technical estoppel which is at best only tangentially related to the lien avoidance issue in any event. This is so for two reasons. First, the express language of Section 522(f) directs the court not to what has been *deemed* exempt but rather to what *would be exempt* under Section 522(b). The wording of the statute simply reflects that, while Congress was generally solicitous of the debtor's fresh start, that solicitude was not without boundaries, especially when it came to balancing that fresh start against pre-existing property rights.[5] It is to Section 522(b), not to Section 522(*l*), that the court's attention must be directed in Section 522(f) actions. *Matter of Allen*, 725 F.2d 290, 292–93 (5th Cir.1984).

Second, requiring secured creditors to object to exemptions in order to preserve defenses to a potential lien avoidance action that may never be brought tends to multiply litigation. In fact, such a rule actually frustrates the prompt determination policy which underlies Section 522(*l*). The lien avoidance exception would swallow up the fresh start rule as the debtor's unfettered use of his or her claimed exemptions is delayed by prophylactic litigation that might never have been brought were the creditor permitted to hold his defenses until such time as a lien avoidance action is

> interfering in what assets are available to satisfy unsecured claims, so long as the secured creditors have their liens. Unsecured creditors have little interest in whether a secured creditor is able to enforce his lien against property already beyond the reach of the unsecured creditors by virtue of Section 522(*l*)....

*In re Mitchell*, 80 B.R. 372, 376 n. 5 (Bankr.W. D.Tex.1987).

**5.** Section 522(f), a statute in derogation of ordinary principles of private rights, especially property rights, must be subjected to strict construction. *Bank of Columbia v. Okely*, 17 U.S. (4 Wheat.) 235, 241–42, 4 L.Ed. 559, 561 (1819); *United States v. De la Maza Arredondo*, 31 U.S. (6 Pet.) 691, 733, 8 L.Ed. 547, 563 (1832). It is thus appropriate to read the language of Section 522(f) narrowly, and to construe its tenor strictly.

initiated.[6] Sound policy dictates that the debtor not be permitted to interpose Section 522(*l*) to prevent a creditor's raising invalidity of claimed exemptions as a defense to a lien avoidance action.

## II. *The nature of estoppel*

The estoppel concept upon which the *Hahn* decision purports to be premised bears examination. It has been said that "[p]erhaps no other technical legal term is more loosely used than the term 'estoppel.'" 28 *Am.Jur.2d*, Estoppel and Waiver, § 1, p. 599 (1966). It is a flexible doctrine "which should be applied when the equities of the situation necessitate its implementation." *Matter of Howard's Appliance Corp.*, 69 B.R. 1015, 1021 (Bankr.E.D. N.Y.1987). "[E]stoppel means nothing more than the application of the rules of fair play." *Id.*, citing *Schatzman v. Dep't of Health and Rehabilitated Services, State of Florida (In re King Memorial Hospital, Inc.)*, 19 B.R. 885, 891 (Bankr.S. D.Fla.1982). On the other hand, "[i]t must be emphasized that estoppel is a doctrine that should not be applied by a court haphazardly." *Matter of Howard's Appliance Corp.*, 69 B.R. at 1021.[7]

██ The failure of a judicial lien creditor to timely object to a debtor's exemption claims cannot trigger traditional principles of equitable estoppel, as at least two necessary elements are missing.

First, such a failure cannot of itself give any proof that the creditor thereby intended to mislead the debtor or influence the debtor to act or forebear to act. 28 *Am. Jur.2d*, Estoppel and Waiver, § 35, pp. 640–41 (1966). The debtor's decision to avoid a creditor's lien does not depend for its vitality on whether the creditor has objected to the exemption claim. Only if this court were to presume that an estoppel was already raised could it find an intent to mislead from the mere failure to object to the exemption claims. As a matter of logic, one cannot presume the conclusion to satisfy an element essential to reach that conclusion.

Second, there has not been any peculiar reliance on the part of the debtor which one could call injurious or detrimental. 28 *Am. Jur.2d*, Estoppel and Waiver, § 35, pp. 640–41 (1966). The debtor would have had to have filed this action in order to avoid AIW's and IRM's liens in any event. *See* Bankruptcy Rule 4003(d). To argue that the debtor would not have tried lien avoidance had it known that the lien would not stand up under Section 522(b) presumes that the debtor is relying on estoppel to foreclose relitigation of the exemption issue. Once again, the rule of logic which prohibits presuming the conclusion in order to get to the conclusion prevents this result. Even were one to find reliance, it could hardly be considered to be detrimental, as the only "prejudice" that the debtor suffers is having to defend the legitimacy of its exemption claim, a result that does not offend this court's sense of "fair play" especially in light of the extraordinary remedy that Section 522(f) represents. *See Schatzman, supra; see also USLife v. U.S. Life Ins. Co.*, 560 F.Supp. 1302, 1306 (N.D.Tex.1983) ("To estop a party from urging a position is an extreme measure which should only be taken where the equities are clearly in its favor").

---

**6.** In this case the debtor is better off because AIW and IRM were *not* required to object in order to preserve their defenses. The total value of the debtor's property deemed exempt under Section 522(*l*) but not in fact exempt under Section 522(b) was listed at $1.238 million. Under a contrary rule, both creditors would have objected to the claimed exemptions not to keep the property in the estate but solely to avoid losing their defense in a later lien avoidance action. The result, though, would be that the debtor would lose the *entire property including the equity over the judicial lien.* If on the other hand the judicial lien creditors are not obligated to object, they probably would not. If no one else did either (and no one else did in this case), the debtor would have the benefit of the equity in excess of the small judicial lien *even if he or she lost the lien avoidance action.*

**7.** It is still the rule that estoppels should be resorted to solely as a means of preventing injustice and should not be permitted to defeat the administration of the law, or to accomplish a wrong or secure an undue advantage, or to extend beyond the requirements of the transactions in which they originate. 28 *Am.Jur.2d*, Estoppel and Waiver, § 3, p. 601 (1966).

The doctrine of judicial estoppel is similarly unavailable. The doctrine "may be applied when a party has successfully taken an affirmative position regarding material facts in prior court proceedings, and prevents that party from asserting an inconsistent position in later proceedings." *In re Caro Area Services for the Handicapped*, 53 B.R. 438, 441 (Bankr.E.D.Mich. 1985), citing *In re Johnson*, 518 F.2d 246, 252 (10th Cir.), *aff'd sub nom.*, *Clark v. Johnson*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975). "Judicial estoppel is intended to protect the integrity of the judicial process by preventing intentional inconsistency." *In re Taylor*, 72 B.R. 696, 699 (Bankr.E.D.Tenn.1987), citing *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 599 (6th Cir.1982). *See also Texas Co. v. Gulf Refining Co.*, 26 F.2d 394, 397 (5th Cir.1928); *USLife v. U.S.Life Ins. Co.*, 560 F.Supp. 1302, 1305 (N.D.Tex.1983). In *US-Life*, then District Judge Robert Hill distinguished judicial estoppel from equitable estoppel, noting that the latter "applies when one of the parties has detrimentally relied upon the position taken by the other party in the earlier proceeding" while the former "looks to the relationship between the litigant and the judicial system ... courts seek to prevent parties from 'playing fast and loose' with them to suit the exigencies of self interest." *USLife v. U.S.Life Ins. Co.*, 560 F.Supp. at 1304–05.

■ The function of judicial estoppel is to minimize the risk of inconsistent results. "If the second court were to adopt a party's position where that party was successful in a prior proceeding [with an opposite position], then at least one court has probably been misled." *USLife v. U.S. Life Ins. Co.*, 560 F.Supp. at 1305 (citing *Edwards v. Aetna Life Ins. Co., supra*). No such danger is presented in the case of lien avoidance actions where a creditor has failed to object to a claimed exemption, because the exemption itself is not in jeopardy. *See* discussion *supra; In re Payton*, 73 B.R. 31, 31 (Bankr.W.D.Tex.1987). Thus, no inconsistent position results.[8]

■ An estoppel by silence may be raised where (1) there is a duty to speak, (2) the party being estopped has had an opportunity to speak, and (3) there is an injury to the party invoking the doctrine. *In re Ellison Associates*, 13 B.R. 661, 675–76 (Bankr.S.D.N.Y.1981), *aff'd*, 63 B.R. 756 (S.D.N.Y.1983). If there is any duty at all to object to exemption claims, it arises from the need for prompt determination to assist the debtor's fresh start. *In re Novotny*, 17 B.R. 196, 198 (Bankr.D.S.D.1982). In a chapter 7 case, all the debtor's assets, both exempt and non-exempt, are held hostage by the chapter 7 trustee. Section 522($l$) and Bankruptcy Rule 4003(b) accomplish a prompt determination of exemptions, thereby liberating that property for the debtor's fresh start from the trustee's administration. *In re Starns*, 52 B.R. 405, 410 (S.D.Tex.1985). The unsecured creditors (and their spokesperson, the trustee) are the ones affected by the debtor's exemption decisions. For them, the "pool of assets" from which they may recover will be irrevocably reduced by the amount of assets removed for the debtor's fresh start. It is they who have the duty to speak or be forever estopped. *See In re Payton*, 73 B.R. 31 (Bankr.W.D.Tex.1987).

■ Secured creditors, by contrast, rely solely on their liens. *See* 11 U.S.C. 506(a) (Norton pamphl. ed. 1987). Their liens will follow the property whether it is exempt or not. They are thus unconcerned whether the property remains within the estate (at least insofar as the exemption issue is concerned). A secured creditor is not obligated to object to a debtor's claim of exemption or to file a proof of claim in order to preserve its lien. *Robinson v. Olin Federal Credit Union*, 48 B.R. 732, 739 (D.Conn.

---

**8.** Arguably, if AIW and IRM *had* timely objected to the debtor's exemption claim and had *failed,* judicial estoppel would not prevent them from re-urging the invalidity of the exemption in the lien avoidance actions. "[S]uccess in the prior proceeding is considered necessary for the estoppel to apply." *USLife v. U.S. Life Ins. Co.,* 560 F.Supp. 1302, 1305 (N.D.Tex.1983). It is difficult to imagine why AIW and IRM would be permitted to litigate the issue twice by objecting yet not at all by failing to object and still remain true to the principles of fair play which underlie the estoppel doctrine.

1984), *citing In re Certain*, 30 B.R. 379 (Bankr.D.Conn.1983); *Matter of Pierce*, 29 B.R. 612 (Bankr.E.D.N.C.1983); *In re Weathers*, 15 B.R. 945 (Bankr.D.Kan.1981). They care less about the available pool of assets because they are not looking to the pool for their recovery but rather to their particular collateral.[9]

Lien avoidance, unlike exemption determinations, does not require prompt determination, as such actions are discretionary with the debtor and may be brought at almost any time the debtor chooses. *See In re Quackenbos*, 71 B.R. 693, 695 (Bankr. E.D.Pa.1987) (action brought 18 months after case closed). The debtor will have his exemptions regardless of the outcome of the lien avoidance actions he or she later brings. The policies of Section 522(*l*) are not frustrated by permitting creditors to later defend against lien avoidance on grounds the property does not *qualify* under Section 522(b). Therefore, these creditors had no duty to object to the debtor's exemption claims.[10] As a result, no estoppel by silence is raised.

■■■ Finally, principles of res judicata and collateral estoppel are inapposite to the case at hand. Res judicata bars relitigation of the same cause of action. *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir.1984); *Lubrizol Corp. v. Exxon Corp.*, 632 F.Supp. 326, 329 (S.D.Tex.1986). The merits of the current action must have already been litigated for the doctrine to apply. *F.T.C. v. Evans Products Co.*, 60 B.R. 829, 832 n. 1 (W.D.Wash.1986). Whether the creditor's lien can be avoided is certainly not decided by whether the assets the debtor has claimed as his exempt property are in fact removed from the estate's administration. Res judicata therefore does not apply. *See Matter of Braniff Airways, Inc.*, 783 F.2d 1283, 1289 (5th Cir.1986) ("bankruptcy courts typically allow creditors to press their claims more than once, as circumstances change.... if reasonable doubt exists as to what was decided in the first action, the doctrine of res judicata should not be applied").

■■■ Collateral estoppel requires that the same issue has been actually litigated in a prior judgment and that the issue was essential to the prior judgment. *Id.; In re Song*, 58 B.R. 351, 352 (Bankr.E.D.Tenn. 1986). The "issue" of exemption has not been litigated before in this case. Even if it could be said that Bankruptcy Rule 4003(b) operated to decide the issue, however, the only issue precluded was whether the claimed assets are exempt property pursuant to Section 522(*l*). *In re Payton*, 73 B.R. 31 (Bankr.W.D.Tex.1987). Whether the exemptions are in fact valid under Section 522(b), the issue necessary to sustain a lien avoidance action, has not yet been tested. *Matter of Allen*, 725 F.2d 290, 292 (5th Cir.1984).

For all the foregoing reasons, this court holds that a creditor in a chapter 7 case is permitted to contest whether the exemption on which a lien avoidance action is premised is in fact "an exemption to which the debtor *would have been* entitled under Section 522(b)," regardless whether the property has already been deemed exempt by any other unsecured creditor to recover its claim. Its ability to contest the lien avoidance action with charges that the property in question is not eligible for exemption under Section 522(b) will not change that result.

---

**9.** Of course, secured creditors might suffer a deficiency and would then have an interest in the common pool. 11 U.S.C. § 506(a). That observation does not affect the analysis however. Every secured creditor must make an educated determination of the likelihood that it will have an unsecured claim against the estate and must then decide what, if any, actions it will take to protect that claim or assure it of payment. To that extent, the secured creditor operates as an unsecured creditor, making the same kinds of decisions and being bound by the same rules as other unsecured creditors. If the secured creditor elects not to object to the debtor's exemption claims within the time frame of Bankruptcy Rule 4003(b), it will be in no better position to recover its deficiency claim than will

**10.** Indeed, it is difficult to see how creditors could have a *duty* to litigate in advance an element of debtor's lien avoidance action the burden of proof for which falls upon the debtor, especially as the burden of proof for objections to exemptions is upon the creditor. *Compare In re Shands*, 57 B.R. 49, 50 (Bankr.D.S.C.1985) *with* Bankruptcy Rule 4003(c) (Norton pamphl. ed. 1987).

virtue of Section 522(*l*), 11 U.S.C. §§ 522(f), 522(*l*) (Norton pamphl. ed. 1987).

## CONCLUSION

The court concludes that AIW and IRM were not prevented from raising the debtor's entitlement to exemption as a defense to the debtor's lien avoidance actions brought to avoid their respective judicial liens under Section 522(f), notwithstanding their failure to object to the debtor's claims of exemption within thirty days after the first meeting of creditors. The court further finds that none of the real property claimed by the debtor is otherwise exempt under Texas law (other than the Kerr County property which debtor asserted to be his homestead) and that AIW's and IRM's judicial liens on debtor's real property (other than his homestead) may therefore not be avoided by the debtor. It is therefore

ORDERED that the Motion of Debtor to avoid the judgment lien or liens of Alamo Iron Works pursuant to 11 U.S.C. § 522(f)(1) be and the same is hereby DENIED. It is further

ORDERED that the Motion of Debtor to avoid the judgment lien or liens of Ingram Ready Mix pursuant to 11 U.S.C. § 522(f)(1) be and the same is hereby DENIED.

# APPENDIX

## SCHEDULE B—3. — PROPERTY NOT OTHERWISE SCHEDULED

| Type of property | Description and location | Market value of debtor's interest without deduction for secured claims listed in schedule A—2 or exemptions claimed in schedule B—4 |
|---|---|---|
| a. Property transferred under assignment for benefit of creditors, within 90 days prior to filing of petition (specify date of assignment, name and address of assignee, amount realized therefrom by the assignee, and disposition of proceeds so far as known to debtor) | | $ |
| b. Legal or equitable interest in Property of any kind not otherwise scheduled | | |
| Total | | 00.00 |

## EXEMPTION ELEC

The Debtor ___W.K. MONTGOME.___ , W.K. MONTGOMERY CONSTRUCTION COMPANY (Check one) (If a Jo The De

elects to have exemptions determir

☐ 11 U.S.C. 522(b) (1) (Fed.

☒ U.S 522(b) (2) (State (

elects 1

☐ 11 U

☐ 11 L.

·(name)
.ions determined pursuant to (Check one)

.1) (Federal exen. 1)

J) (State exemp.

## SCHEDULE B—4. — PROPERTY CLAIMED AS EXEMPT

| Type of property / Location, description, and so far as relevant to the claim of exemption, present use of property | Specify statute creating the exemption | Value claimed exempt |
|---|---|---|
| 1. MEADOWS OF RIVERHILL, #2 LOTS 1-20 & 22-27, LOAN AMOUNT $357,829.15, PLUS $163,000.00-DEBTORS POSS. | 11USC522(b)2 | 520,000.00 |
| 2. VILLAGE WEST INDUSTRIAL PHASE 1 LOTS #13 & 14, TOTAL LIENS $527,211.86-DEBTOR'S POSSESSION | " " | 318,000.00 |
| 3. TOWN & COUNTRY CENTER 1/4 INTEREST, TOTAL LIENS $440,000.00-DEBTOR'S POSSESSION | " " | 400,000.00 |
| 4. HOMESTEAD-1.7 ACRES, RURAL HOMESTEAD, KERR COUNTY, 505 N MAIN STREET, INGRAM, TEXAS 78025, NO LIEN-DEBTOR'S POSSESSION | " " | 225,000.00 |
| 5. CHECKING FIRST NATIONAL BANK OF KERRVILLE-DEBTOR'S POSS. | " " | 00.00 |
| 6. CHECKING, NAT. BANK OF COMMERCE (SEE EX. A)-DEBTOR'S POSS | " " | 00.00 |
| 7. CHECKING, BANK OF KERRVILLE-DEBTOR'S POSS. | " " | 00.00 |
| 8. HOUSEHOLD GOODS, TV, STEREO, FURNITURE, FIXTURES, APPLIANCES,ETC-DEBTOR'S POSSESSION | " " | 5,000.00 |
| 9. 1 GUN, MAGNUM-DEBTOR'S POSSESSION | " " | 250.00 |
| 10. AUTOMOBILES, TRUCKS, TRAILERS AND OTHER VEHICLES-SEE EXHIBIT B, DEBTOR'S POSSESSION (EVERY PIECE OF EQUIP-MENT SECURED BY LIEN HELD BY 1ST NAT BANK $284,983.24 DEBT, SEE A-2) | " " | 88,000.00 |
| | Total ....... $ | |

CONTINUED

