**In re Coy Lee SMITH and Maxine Smith, Debtors.**

**Bankruptcy No. 289–01163–B–7.
Motion Nos. BCB–1, DM–1.[1]**

United States Bankruptcy Court,
E.D. California.

Sept. 7, 1990.

---

1. Coachman Industries, Inc. previously agreed to waive the 11 U.S.C. § 362(e) "30 day" deadline.

758

Daniel J. McCampbell, Chico, Cal., for secured claimant Coachman Industries, Inc.

Ken Baker, Baker, Cornell & Baumbach, Chico, Cal., for debtors Coy and Maxine Smith.

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Bankruptcy Judge.

The three major questions raised by these motions are (1) whether a judicial lien creditor, having initially failed to object to any of the debtor's exemption claims, is foreclosed from defending a lien avoidance motion by objecting to the validity of the exemption, (2) whether the pre-bankruptcy perfection of a lien, coupled with a concurrent waiver of a potential exemption claim by the debtor, terminates some or all of the ownership interest of the debtor-obligor in the liened asset, and (3) whether the pre-bankruptcy statutory or procedural waiver of an exemption by a debtor under applicable state law effectively precludes that debtor in a subsequent bankruptcy from utilizing § 522(f)(1)[2] to avoid the judicial

**2.** All references to code sections are to Title 11 of the United States Code unless otherwise indi-   cated.

lien which caused the waiver. For the reasons set forth in greater detail below, the court finds that the answer to all three questions is no.

## SUMMARY OF FACTS

The following relevant facts are undisputed:

1) In 1986 the Debtors obtained a judgment for personal injuries after a jury trial in the Glenn County Superior Court against the Hooker Chemical Company (Hooker) totalling $42,000.00 ($14,000.00 in actual damages and $28,000.00 in punitive damages). The award was ultimately sustained on appeal.

2) On December 11, 1987 Coachman Industries, Inc. (Coachman) obtained a personal judgment for breach of contract against, among others, Debtors Coy and Maxine Smith in the aggregate amount of $37,847.82.

3) On April 8, 1988 Coachman filed a notice of lien and an abstract of its judgment in the Debtors' pending action against Hooker. By following this procedure outlined in California Code of Civil Procedure (C.C.P.) § 708.410(b), Coachman obtained a judgment lien on both the Debtors' cause of action and their rights to money or property under any judgment ultimately obtained against Hooker pursuant to the provisions of (C.C.P.) § 708.410(a).

4) Although Coachman served the notice of lien on Debtors' then counsel, Debtors never responded to it. Under applicable California law, a cause of action for personal injury is, generally, automatically exempt without making a claim (C.C.P. § 704.140(a)) to the extent necessary for the support of the judgment debtor and his or her spouse and dependents (C.C.P. § 704.140(b)). However, where as here, a lien on the cause of action is created pursuant to C.C.P. § 708.410(b), the judgment debtor bears the burden of claiming all or any portion of the award that he or she may recover as exempt not later than 30 days after he or she receives notice of the creation of the lien. "... **The failure of the judgment debtor to make a claim of exemption under this section constitutes a waiver of the exemption.**" (C.C.P. § 708.450(a), emphasis added).

5) Debtors filed their voluntary Chapter 7 petition in bankruptcy on February 22, 1989, having listed on their "B-4" schedule of exemptions a claim for "$10,000.00 to $30,000.00" pursuant to C.C.P. § 704.140 for the personal injury award expected from the successful resolution of the Hooker litigation.

6) The Chapter 7 Trustee filed a timely objection to the amount of the exemption claim. Coachman, however, never filed any objection to Debtors' claimed exemptions but moved instead for relief from the automatic stay on February 2, 1990. The Debtors responded with their motion to avoid Coachman's judicial lien on February 28, 1990. Both matters were heard and submitted following supplemental briefing on the dates referenced above.[3]

## DISCUSSION

The preliminary issue raised by Debtors is in regard to Coachman's standing to defend against the § 522(f)(1) motion. They point out that Bankruptcy Rule (Rule) 4003(b) requires that objections to exemption claims be filed within the 30 day period following the conclusion of the § 341 meeting of creditors. They contend that Coachman's failure to timely object to their claim of exemption renders the property so claimed conclusively "exempt", citing the last sentence of § 522(*l*) ("... Unless a party in interest objects, the property claimed as exempt on [Schedule B-4] is exempt."). Thus, they continue, Coachman cannot now contend that the conclusively exempt property is somehow no longer exempt, and Coachman's defense to the lien avoidance motion of the Debtors must fail. Although a substantial number of courts

---

**3.** The court has consolidated these motions for the limited purpose of rendering this decision.

have adopted Debtors' position[4], this court declines to follow those authorities.

■ Instead, for all of the reasons set forth therein, this court adopts the reasoning and follows the holding of *In re Montgomery*, 80 B.R. 385 (Bkrtcy.W.D.Tex.1987) that a lien creditor's failure to object to the debtor's claim of exemptions does not preclude that creditor from raising the issue of whether the liened property is exempt for lien avoidance purposes. As further support for that proposition, this court agrees with *In re Frazier*, 104 B.R. 255, at 259, 260 (Bkrtcy.N.D.Cal.1989) that Congress intended the issue of the debtor's right to exempt liened property, as against the lienor, be determined at the hearing to avoid the lien. Finally, this court shares the due process concerns of both the *Montgomery* and *Frazier* courts. Although the typical Bankruptcy Clerk's notice of the § 341 meeting to creditors includes notice of the 30 day limit of Rule 4003(b), it says nothing at all about lien avoidance. Since creditors receive neither the list of exemptions claimed nor the § 521(2) debtor's Statement of Intentions, the only way the lien creditor can determine if the lien is even in jeopardy is to examine the court file. At a minimum, due process should require that the lien creditor receive notice (rather than be required to search for it) that the liened property is claimed as exempt before the time to object has expired. Adopting the *Montgomery* rule obviates the problem.

Thus, having determined that Coachman is entitled to defend the subject motion to avoid its judicial lien notwithstanding its failure to timely object to the validity of the exemption, the court may now reach the merits of Coachman's defenses.

Coachman's first contention is that the failure by Debtors to preserve their exemptions prior to the filing of the bankruptcy petition when Coachman perfected its lien effectively transmogrified the encumbered portion of the property from "property of the debtor" to property of Coachman and, consequently, foreclosed the utilization of § 522(f)(1) to avoid the resulting judicial lien. In support of its position Coachman cites, by analogy, *In re Gibbs*, 39 B.R. 214, 215 (Bkrtcy.W.D.Ky.1984) (Debtor has no legal or equitable interest in garnished wages "long ago paid over" by the employer to the garnishor), and *In re Yamamoto*, 21 B.R. 58, 59 (Bkrtcy.D.Haw.1982) ("Once the garnishee lien was perfected, Debtors no longer had a legal interest in the garnished wages").

■ Coachman's argument is based upon a misunderstanding of the purpose and nature of a lien. The fundamental purpose of a lien is to "hold" the asset to which it attaches "hostage" as assurance that the debtor's obligation to the creditor will be satisfied. Thus, a lien cannot exist unless there is an obligation to secure and an asset to which it can attach, and the death of either terminates its existence. A lien is created either by agreement between the obligor and obligee or by force when an obligor satisfies prescribed legal procedures. Once created, a lien remains in existence until it naturally expires, which usually coincides with one of two events; when the obligation is satisfied (in which event it no longer serves any purpose), or when the hostage asset is "executed" or foreclosed upon to satisfy, or partially satisfy, the obligation. A third way of terminating a lien is to "unattach" it from the asset, either by transferring the asset to a

---

**4.** *See, e.g., In re Keenan*, 106 B.R. 239, 242 (Bkrtcy.D.Colo.1989) holding that Rule 4003(b) would be rendered meaningless if a creditor is allowed to raise an untimely objection in a § 522(f) lien avoidance proceeding; *In re Caruthers*, 87 B.R. 723, 726 (Bankr.N.D.Ga.1988) ruling that where debtors have properly claimed their exemptions, and in absence of a timely objection thereto, property shall be treated as exempt for purposes of motion to avoid lien; *In re Van Pelt*, 83 B.R. 617, 618–19 (Bankr.S.D. Iowa 1987) finding that in order to avoid impermissible amendment of Rule 4003(b) and undue delay, creditors will be precluded from objecting to the validity of exemptions in context of a § 522(f) motion; *In the Matter of Towns*, 74 B.R. 563, 566–67 (Bankr.S.D.Iowa 1987), *In accord; In re Hahn*, 60 B.R. 69, 76 (Bankr.D.Minn. 1986) ruling that a creditor who failed to timely litigate the debtor's entitlement to underlying exemption is estopped from litigating that issue in subsequent § 522(f) motion; *In re Grethen*, 14 B.R. 221, 225–26 (Bankr.N.D.Iowa 1981).

bona fide recipient, or by avoiding it through an appropriate legal process.

■ The one feature of a lien that is of fundamental importance for the purpose of the present case is that so long as the lien exists the ownership rights of the debtor-obligor in the asset cannot be terminated, but merely remain circumscribed by the lien. Since Coachman had not foreclosed on their lien when the Debtors filed their petition, the Debtors necessarily retained a sufficient interest in the Hooker judgment to utilize § 522(f).

In summation, the problem with Coachman's argument and the *Yamamoto* case is that they equate the lien's creation with the fulfillment of its purpose, which cannot happen until the asset is converted. Thus, just like the debtor's ownership rights in its equipment survived levy and seizure by the Internal Revenue Service in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 211, 103 S.Ct. 2309, 2317, 76 L.Ed.2d 515, 526 (1983) ("Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale"), so the Debtors' ownership rights in the personal injury lawsuit in the case at bar survived the attachment of Coachman's lien.

■ Coachman's next argument is that the phrase "notwithstanding any waiver" found in the text of § 522(f) refers only to "contractual" or "consensual" waivers of exemptions as opposed to "statutory" or "procedural" waivers. In support of this argument, Coachman cites *Zimmerman v. Morgan*, 689 F.2d 471 (4th Cir.1982); *In re McLamb*, 93 B.R. 72 (Bkrtcy.E.D.N.C. 1988); *United States v. Scott*, 45 B.R. 318 (D.C.N.C.1984); *In re Laughinghouse*, 44 B.R. 789 (Bankr.E.D.N.C.1984); and *In re Norton*, 30 B.R. 712 (Bkrtcy.E.D.Tenn. 1983). Each of these cases, although predominately on point, relies on § 522(e) and simply ignores the adjective *"any"* before the word "waiver" in § 522(f). For example, in the seminal case of *United States v. Scott*, the District Court flatly relies upon the construction of 11 U.S.C. § 522(e) to arrive at the conclusion that prepetition waivers of property exemptions are valid in subsequent proceedings to avoid liens pur-

suant to § 522(f). (*Supra*, 45 B.R. 318, 321). Further, *Scott* cites *Zimmerman v. Morgan* and *In re Norton* in support of its holding. *Zimmerman*, however, simply holds that. in order for property to be exempt under state or local law, it must be claimed as exempt in the manner prescribed by those laws. (*Id.*, at p. 472, citing, *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924) (exemption disallowed for failure to comply with state statute for claiming exemption). Further, neither *Zimmerman* nor *White* involved a § 522(f) motion to avoid a lien. Although *Norton* did involve an attempt by a debtor to avoid a lien which would have impaired an exemption had the debtor not waived it under applicable state law, the court relied entirely upon *Zimmerman, White v. Stump*, and 1A *Collier on Bankruptcy*, (14th Ed.1972) at ¶ 6.07 [which under the heading of "Time when Exemptions are Determined" cites *White v. Stump* for the proposition that "a bankrupt cannot claim an exemption which has not been established in accordance with the requirements of state law at the time of filing the petition ..."] in arriving at the conclusion that the debtor could not avoid the lien. (*Supra*, 30 B.R. 712).

■ This court does not dispute the construction of § 522(e) that statutory waivers of exemptions remain, as they did under the Bankruptcy Act, enforceable against the debtor in bankruptcy proceedings to determine the availability of exemptions. (*See*, 3 *Collier on Bankruptcy* (15th Ed.1989), ¶ 522.07, p. 522.30). It cannot agree, however, with Coachman's underlying premise that § 522(e) was intended to modify a debtor's right to lien avoidance pursuant to § 522(f). Rather, although states such as California which have opted out of the federal exemption scheme have the exclusive jurisdiction to restrict the availability of *exemptions*, the availability of *lien avoidance* is a matter strictly governed by *federal law*. (*Matter of Thompson*, 750 F.2d 628, 630 (8th Cir. 1984); *In re Thornton*, 91 B.R. 913, 914 (Bkrtcy.C.D.Cal.1988); *In re Eveland*, 87 B.R. 117, 121 (Bkrtcy.E.D.Cal.1988)). Sec-

tion 522(f)(1) permits the debtor to "avoid a judicial lien **on any property** to the extent that the property could have been exempted **in the absence of the lien**" and, by its plain language, permits the Debtor to avoid such liens "notwithstanding **any waiver**" of the exemption.[5] Consequently, this court concurs with and adopts the recent observation by the Eighth Circuit Court of Appeals that "[t]he plain meaning of section 522(f) demands the conclusion that a debtor may avoid a lien on exempted property despite the debtor's waiver of the exemption." (*In re Thompson*, 884 F.2d 1100, 1103 (8th Cir.1989), citing *Dominion Bank of Cumberlands, N.A. v. Nuckolls*, 780 F.2d 408, 412 (4th Cir.1985) (Debtor may use § 522(f) to avoid lien on homestead notwithstanding valid waiver of homestead exemption)).[6]

▪ Finally, Coachman argues that to the extent an exemption is allowed as against the Hooker litigation proceeds, that exemption should not attach to that portion of the award attributable to punitive damages and, further, that Debtors should be prevented from impermissibly "stacking" their exemptions. Coachman cites no authority nor is the court aware of any which stands for the proposition that a personal injury award must be bifurcated so that only the compensatory portion of the award is subject to exemption. Rather, the plain language of subsections (a) and (b) of C.C.P. § 704.140(a), (b) refers to "an award of damages ... arising out of personal injury" as being exempt "... to the extent

necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor."

▪ Likewise, Coachman's "stacking" argument is without merit. Although in California two spouses together are entitled to claim only one exemption *where the property exempt under a particular exemption is limited to a specified maximum dollar amount* unless the exemption provision specifically provides otherwise (C.C.P. § 703.110(a) (emphasis added); *In re Talmadge*, 832 F.2d 1120 (9th Cir.1987)), the exemption in question, C.C.P. § 704.140, does not contain a specified maximum dollar amount. In any event, § 704.140(b) permits the Debtors to claim the exemption to the extent necessary for *their* support and for the support of their dependents. (C.C.P. § 704.140(b)). Thus, "stacking" appears to be technically permissible under this exemption.

## DISPOSITION

For the foregoing reasons, Coachman's objections to the above-entitled § 522(f)(1) motion are overruled. However, because Debtors are entitled to avoid Coachman's judicial lien only to the extent that it impairs their C.C.P. § 704.140 exemption against the Hooker litigation proceeds, a separate hearing must be conducted for the purpose of determining the extent to which the award is necessary for the support of Debtors and their dependents. Thus, Coachman's lien shall survive and remain

---

5. Although this court's analysis could reasonably begin and end with the plain language of the statute itself (*United States v. Ron Pair Enterprises*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290, 298 (1989), the court finds additional support for its interpretation in the House and Senate Reports which accompanied the enactment of the 1978 Reform Act: "Subsection (f) protects the Debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The Debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien ... **The avoiding power is independent of any waiver of exemptions.**" (S.Rep. No. 989, 95th Cong., 2d Sess. p. 76 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. p. 362 (1977), reprinted U.S.Code Cong. & Ad-

min.News 1978, pp. 5787, 5862, 6318, (emphasis added)).

6. *See, also, In re Pederson*, 78 B.R. 264, 266 (9th Cir.B.A.P.1987), aff'd, 875 F.2d 781 (9th Cir. 1989) (§ 522(f) authorizes the avoidance of judicial lien impairing homestead notwithstanding Washington law which renders homestead declaration invalid as against equitable liens); *Cf., In re Leonard*, 866 F.2d 335, 338 (10th Cir.1989) (If a debtor's property would come within the state's list of exemptions but for the presence of a security interest, then the debtor may utilize § 522(f) to void the lien); *But, see, Matter of Bessent*, 831 F.2d 82, 83 (5th Cir.1987) (Chapter 7 debtors could not avoid nonjudicial, nonpossessory, nonpurchase money security interest in farm equipment where state statute prohibits exemptions on encumbered property). ·

enforceable against any award proceeds which are subsequently found to exceed the allowed exemption. Finally, Coachman's motion for relief from the automatic stay (Motion DM–1) will be granted after the support hearing to permit it to enforce its limited rights against the Hooker Judgment.

The foregoing shall constitute this court's findings of fact and conclusions of law where appropriate. A separate order conforming hereto shall be issued forthwith by the court.